2013-1057

# United States Court of Appeals
# for the Federal Circuit

VEDERI, LLC,

*Plaintiff – Appellant,*

v.

GOOGLE, INC.,

*Defendant – Appellee.*

Appeal from the United States District Court for the
Central District of California in case no. 10-CV-7747,
Chief Circuit Judge Alex Kozinski, sitting by designation.

---

## BRIEF OF APPELLEE

---

James R. Batchelder
Sasha G. Rao
Brandon H. Stroy
ROPES & GRAY LLP
1900 University Avenue, 6th Floor
East Palo Alto, California 94303
(650) 617-4000
james.batchelder@ropesgray.com
sasha.rao@ropesgray.com
brandon.stroy@ropesgray.com

Daryl L. Joseffer
KING & SPALDING LLP
1700 Pennsylvania Ave., NW
Washington, DC 20006
(202) 737-0500
djoseffer@kslaw.com

*Counsel for Appellee*                                    April 15, 2013

*additional counsel listed on inside cover

Christopher J. Harnett
Todd M. Simpson
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York 10036-8704
(212) 596-9000
christopher.harnett@ropesgray.com
todd.simpson@ropesgray.com

Adam M. Conrad
KING & SPALDING LLP
100 N Tryon St., Suite 3900
Charlotte, NC 28202
(704) 503-2600
aconrad@kslaw.com

*Counsel for Appellee*

# CERTIFICATE OF INTEREST

Counsel for appellee Google Inc. certifies the following:

1. The full name of every party represented by me is:  Google Inc.

2. The name of the real party in interest represented by me is:  Google Inc.

3. Google Inc. has no parent corporations and no publicly held companies own 10 percent or more of its stock.

4. The names of all firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this Court are:

   Ropes & Gray LLP:  Christopher J. Harnett; Sasha G. Rao; Todd M. Simpson; Brandon H. Stroy

   Formerly of Ropes & Gray LLP:  Joshua V. Van Hoven; Andrew Koning

   Bostwick & Jassy LLP: Gary L. Bostwick; Kevin L. Vick

   King & Spalding LLP:  Daryl L. Joseffer; Adam M. Conrad

This 15th day of April, 2013.                    /s/ Daryl L. Joseffer
                                                 Daryl L. Joseffer

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT OF RELATED CASES ..................................................... vi

STATEMENT OF JURISDICTION ......................................................... vi

INTRODUCTION ...................................................................................... 1

STATEMENT OF ISSUES ........................................................................ 2

STATEMENT OF THE CASE .................................................................... 3

STATEMENT OF FACTS .......................................................................... 4

      A.     Google And The Accused Street View Service ................................... 4

      B.     Vederi And Its Asserted Patents ........................................................ 7

            1.     The patented method emphasizes efficiency over image quality by excluding computationally intensive spherical imagery. ........................................................ 7

            2.     The asserted claims are limited to images that depict "substantially elevations." ............................................ 10

            3.     The applicants added the relevant claim language to overcome and disclaim the prior art. ........................... 11

      C.     Procedural History ........................................................................ 13

            1.     The district court construed "substantially elevations" in light of its architectural plain meaning and the disclosures in the specification. ................................... 13

            2.     The district court granted summary judgment of non-infringement. ................................................................. 15

SUMMARY OF ARGUMENT .................................................................. 17

STANDARD OF REVIEW ...................................................................... 21

ARGUMENT ............................................................................................ 21

I.     THE DISTRICT COURT CORRECTLY CONSTRUED THE CLAIM TERM "DEPICTING VIEWS . . . THE VIEWS BEING SUBSTANTIALLY ELEVATIONS" ........................................... 22

A.    The Intrinsic And Extrinsic Evidence Support The District Court's Construction. .........................................................22

       1.    "Elevations" is an architectural term of art that designates a flat, non-perspective view of an object. ...............22

       2.    As reflected by the claims, the common specification disclaims spherical imagery, which was known in the prior art. .................................................................26

       3.    Vederi narrowed its claims during prosecution to avoid prior art. ...................................................................30

B.    Vederi's Criticisms Of The District Court's Construction Are Misplaced. .........................................................32

       1.    Vederi's efforts to redefine "views" and "images" are irrelevant and incorrect. ..........................................32

       2.    Vederi's other criticisms are off base. .....................35

II.    THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT OF NON-INFRINGEMENT .................................37

    A.    Street View Does Not Depict Views That Are Substantially Elevations. ..........................................................38

    B.    Vederi Incorrectly Contends That A Subset Of Views Depicted By Street View Images Are Flat. ..........................41

    C.    Street View Does Not Infringe Under The Doctrine Of Equivalents ..............................................................45

    D.    Vederi's Conclusory Expert Declaration Adds Nothing....................48

III.    VEDERI IS NOT ENTITLED TO SUMMARY JUDGMENT....................49

CONCLUSION .................................................................51

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*AllVoice Computing PLC v. Nuance Commc'ns., Inc.*,
  504 F.3d 1236 (Fed. Cir. 2007) ........................................................28

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
  672 F.3d 1335 (Fed. Cir. 2012) ........................................................33

*Asyst Techs., Inc. v. Emtrak, Inc.*,
  402 F.3d 1188 (Fed. Cir. 2005) ........................................................46

*Broadcom Corp. v. Qualcomm Inc.*,
  543 F.3d 683 (Fed. Cir. 2008) ........................................................31

*Cephalon, Inc. v. Watson Pharms., Inc.*,
  707 F.3d 1330 (Fed. Cir. 2013) ........................................................45

*Combined Sys., Inc. v. Def. Tech. Corp. of Am.*,
  350 F.3d 1207 (Fed. Cir. 2003) ........................................................21

*Datamize, LLC v. Plumtree Software, Inc.*,
  417 F.3d 1342 (Fed. Cir. 2005) ........................................................42

*Edwards LifeSciences v. Cook Inc.*,
  582 F.3d 1322 (Fed. Cir. 2009) .............................................. 28, 46

*EnzoBiochem, Inc. v. Applera Corp.*,
  599 F.3d 1325 (Fed. Cir. 2010) ........................................................21

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
  535 U.S. 722 (2002) ........................................................46

*Freedman Seating Co. v. Am. Seating Co.*,
  420 F.3d 1350 (Fed. Cir. 2005) ........................................................47

*Helmsderfer vs. Bobrick Washroom Equip., Inc.*,
  527 F.3d 1379 (Fed. Cir. 2008) ........................................................23

*Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*,
  370 F.3d 1131 (Fed. Cir. 2004) (en banc) ........................................................46

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*,
  493 F.3d 1358 (Fed. Cir. 2007) ........................................................34

*Int'l Visual Corp. v. Crown Metal Mfg. Co.*,
   991 F.2d 768 (Fed. Cir. 1993) .............................................................43

*Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*,
   285 F.3d 1046 (Fed. Cir. 2002) (en banc) (per curiam) .......................28

*Lockheed Martin Corp. v. Space Sys./Loral, Inc.*,
   324 F.3d 1308 (Fed. Cir. 2003) ...........................................................46

*Metabolite Labs., Inc. v. Lab. Corp. of Am.*,
   370 F.3d 1354 (Fed. Cir. 2004) ...........................................................34

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008) ...........................................................25

*Pause Tech. LLC v. Tivo Inc.*,
   419 F.3d 1326 (Fed. Cir. 2005) ...........................................................36

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (en banc) ..................................... 23, 30

*Renishaw PLC v. MaripossSocieta' per Azioni*,
   158 F.3d 1243 (Fed. Cir. 1998) ...........................................................29

*Saffran v. Johnson & Johnson*,
   _ F.3d _, 2013 WL 1338910 (Fed. Cir. 2013) ....................................36

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
   242 F.3d 1337 (Fed. Cir. 2001) ...........................................................46

*Seremekun v. Thifty Payless, Inc.*,
   509 F.3d 978 (9th Cir. 2007) ...............................................................49

*Sitrick v. Dreamworks, LLC*,
   516 F.3d 993 (Fed. Cir. 2008) .............................................................49

*SmithKline Beecham Corp. v. Apotex Corp.*,
   439 F.3d 1312 (Fed. Cir. 2006) ...........................................................45

*Southwall Techs., Inc. v. Cardinal IG Co.*,
   54 F.3d 1570 (Fed. Cir. 1995) .............................................................37

*Streck, Inc. v. Research & Diagnostic Sys., Inc.*,
   665 F.3d 1269 (Fed. Cir. 2012) ...........................................................49

iv

*Tech. Patents LLC v. T-Mobile (UK) Ltd.*,
  700 F.3d 482 (Fed. Cir. 2012) ...............................................................48

*Thorner v. Sony Computer Entm't Am. LLC*,
  669 F.3d 1362 (Fed. Cir. 2012) .................................................... 21, 22

*Toshiba Corp. v. Imation Corp.*,
  681 F.3d 1358 (Fed. Cir. 2012) ...........................................................51

*Trading Techs Int'l, Inc. v. eSpeed, Inc.*,
  595 F.3d 1340 (Fed. Cir. 2010) ...........................................................28

*Vederi, LLC v. Google, Inc.*,
  No. 2:10-cv-07747-AK-CW, 2012 WL 4511424 (C.D. Cal. 2012) .....................4

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
  520 U.S. 17 (1997) .................................................................................45

*Wavetronix v. EIS Elec. Integrated Sys.*,
  573 F.3d 1343, 1355(Fed. Cir. 2009) ............................................ 21, 47

*Wm. Wrigley Jr. Co. v. Cadbury Adams USA, LLC*,
  683 F.3d 1356 (Fed. Cir. 2012) ...........................................................46

## Other Authorities

*Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*,
  Order, No. 2012-1014, -1015 (Fed. Cir. Mar. 15, 2013) ....................................21

Non-final Office Action,
  Control No. 95/000,681 (Nov. 7, 2012) (U.S. Patent No. 7,805,025) .................13

Non-final Office Action,
  Control No. 95/000,682 (Nov. 7, 2012) (U.S. Patent No. 7,239,760) .................13

Non-final Office Action,
  Control No. 95/000,683 (Nov. 5, 2012) (U.S. Patent No. 7,577,316) .................13

Non-final Office Action,
  Control No. 95/000,684 (Nov. 1, 2012) (U.S. Patent No. 7,813,596) .................13

## STATEMENT OF RELATED CASES

There are no related cases.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1338. The court entered judgment of non-infringement in favor of Defendant-Appellee Google Inc. ("Google") on October 5, 2012, without disposing of Google's invalidity counterclaim. A1-A2. Plaintiff-Appellant Vederi, LLC ("Vederi") filed a premature notice of appeal from that non-final judgment on October 25, 2012. D.I. 116.

On February 27, 2013, the district court dismissed Google's invalidity counterclaim without prejudice and entered an amended judgment. A1a-1b. Vederi filed a notice of appeal from that final, appealable judgment on March 28, 2013. D.I. 131. Vederi has filed an unopposed motion to consolidate the two appeals. *See* Fed. Cir. D.I. 47 (Apr. 12, 2013). This Court has jurisdiction under 28 U.S.C. § 1295.

**INTRODUCTION**

Google Street View ("Street View") enables users to view and navigate through images of city streets, parks, museums, and other attractions as if they were actually there. Vederi asserts that Street View infringes its patented methods for computer-implemented visual navigation. The patent examiner initially disallowed all of the asserted claims because of the extensive prior art. To overcome that disallowance, Vederi limited the asserted claims to images "depicting views . . . the views being substantially elevations." A353 at 15:65-16:2.

What "substantially elevations" lacks in grammar it makes up for in the settled meaning of the term "elevations." The parties agreed that the patents borrow that term from the field of architecture. Within that field, "elevations" refers to vertical flat views—non-perspective views that are flat, as opposed to spherical or curved. The specification similarly discloses the use of vertical columns, while criticizing and disclaiming the use of spherical and curved imagery. The specification teaches that spherical approaches are "computationally intensive and hence cumbersome and inefficient," A346 at 2:1-2, 2:18-19—a "deficienc[y] associated with the prior art" that "[t]he present invention addresses and alleviates." *Id.* at 2:18-19.

The district court heard extensive briefing and argument on the meaning of "substantially elevations," including two rounds of claim construction briefing, an

1

all-day *Markman* hearing, and additional summary judgment briefing and argument that essentially rehashed the claim-construction dispute. In light of the term's ordinary meaning and the specification's description of the patented invention, the court construed "depicting . . . substantially elevations" to mean "vertical flat (as opposed to curved or spherical) depictions of front or side views." A193-94; A1703.

That claim construction is dispositive because, as Vederi concedes, all of the images that Street View collects, stores, and retrieves are curved, not flat. Indeed, Vederi concedes that most of the views depicted in Street View's images are not "substantially elevations" and therefore do not infringe under the district court's claim construction. But Vederi argues that if a user views a Street View image from a specific angle, the curvature—although present—is imperceptible on the user display. The district court rejected that perception-based test and granted summary judgment because curvature is curvature whether or not an individual can perceive it from any particular angle on a computer screen. Indeed, the claim language refers to the stored images, not displayed images, as Vederi itself argued successfully during claim construction.

## STATEMENT OF ISSUES

1.    Did the district court correctly construe the claim term "depicting views . . . the views being substantially elevations," by relying on the plain and

ordinary meaning of the architectural term and the intrinsic evidence that discloses vertical flat views and images while disclaiming spherical ones?

2.    Did the district court correctly grant summary judgment of non-infringement in favor of Google because the accused Street View product uses only curved, spherical images and views?

3.    If this Court were to vacate the district court's grant of summary judgment, should it decline to address, in the first instance, factual questions the district court did not reach in light of its ruling on "substantially elevations"?

## STATEMENT OF THE CASE

Vederi filed this patent infringement action on October 15, 2010.  A1513.  Vederi alleges that Google's Street View service infringes thirteen method claims found in four patents:  claim 8 of U.S. Patent No. 7,239,760 ("the '760 Patent"); claims 13 and 18-24 of U.S. Patent No. 7,577,316 ("the '316 Patent"); claims 28 and 35 of U.S. Patent No. 7,805,025 ("the '025 Patent"); and claims 4 and 21 of U.S. Patent No. 7,813,596 ("the '596 Patent").  A326, A573, A931, A1202.

On November 22, 2011, the district court held a claim construction hearing, during which it construed the disputed claim terms.  A73.  On May 1, 2012, the parties filed cross-motions for summary judgment.  A1500-01.  The court conducted a hearing on those motions on September 7, 2012, A203, and issued an opinion on September 26, 2012, granting Google's summary judgment motion and

3

denying Vederi's.  A3-10 (available at *Vederi, LLC v. Google, Inc.*, No. 2:10-cv-07747-AK-CW, 2012 WL 4511424 (C.D. Cal. 2012)).

The district court entered judgment of non-infringement in favor of Google on October 15, 2012 (A1-2), and an amended final judgment on February 27, 2013 (A1a-1b).

## STATEMENT OF FACTS

### A.    Google And The Accused Street View Service

Google is a leading innovator of high-technology software and services. The accused product—Street View—enables individuals to view and navigate through images of city streets, parks, museums, and other attractions covered by the service.  To create the images for Street View, Google operates vehicles that drive through business and residential areas around the world, carrying as many as fifteen cameras for collecting images.  *See* A2567.  The cameras on the car take overlapping pictures from a single location at approximately the same time.  *See* A2538; A2568.

Google processes this enormous amount of data using complex algorithms. A166; A2569.  The images are spliced together to create a virtual, spherical representation of the scene.  A2539-40; A2568-69.  As a result, the initially discrete images appear to the user as if they were taken with a single, "spherical" lens.  *Id*.

4



A3169.  From the user's perspective, Street View presents a virtual representation of what a geographical scene would look like if the user were actually there. A2538; A2571; A2573.  A Street View user is able to shift the viewing angle 360 degrees in any direction to fully appreciate the scene from any angle.  *Id.*  For example, while viewing a four-way intersection, the user can look down each road, at the four street corners, or at any point in between.  *See* A2571-73; A3633. When viewing a street, the user would have the option of looking at either side of the street, down the street in either direction, or at any angle in between, including up or down.  *See id.*

Street View centers these spherical images at intervals along streets.  *See* A1721.  When a user moves up or down a street, the user is immersed in the next available spherical image; the user cannot shift the view smoothly down the road. Thus, Street View may center one spherical image on a business at address 60 and

the next image at address 100 on the same street.  As a result, the user could view the business at address 80 at an angle (from the front of 60 or 100), but never from directly in front of 80 itself.  *See* 3364-65.

Because the source image is curved, projecting the image onto a two-dimensional display introduces distortion in the resulting views.  *See* A2539-40; A2569-70.  Lines that are straight in real-world objects will appear slightly curved to Street View users.  *See* A2569-71.  Distortion is more pronounced in wider fields of view, but distortion is present even if only a narrow field of view is presented.  *See id.*  The appearance of distortion is reduced, but not eliminated, by dynamically moving the field of view along with the viewing angle selected by the user.  *See* A3592; A3631.  As Vederi's expert noted, the resulting display is an "[*a*]*pproximate* correct perspective transformation."  A3211 (emphasis added).



Rendering Panoramas for Viewing

Approximate correct perspective transformation by series of affine transformations applied to triangles
→ very fast in Flash!

Google

6

A3592.

**B.    Vederi And Its Asserted Patents**

Vederi is a California-based company that owns the four patents at issue. *See* A1514.    The asserted patents, which share a common specification, are generally "directed to a computer-implemented system and method for synthesizing images of a geographic location to generate composite images of the location" so as to "allow[] a user to visually navigate the area from a user terminal." A346 at 2:19-22, 2:47-48.

Vederi's patents explain that virtual navigation is not a novel concept.  A346 at 1:39-42.  The patents' common specification identifies and discusses several prior-art methods of "collect[ing] image and position data by driving through [a] location," *id.* at 1:39-42, and creating databases of geographic images, *id.* at 1:23-45; 1:62-2:2.    According to the patents' provisional application, the patented "method is a compromise between quality of the synthetic image and algorithmic complexity."  A1925.  Thus, the key to the patented method—and the crux of this appeal—lies in the nature of those composite images.

**1.    The patented method emphasizes efficiency over image quality by excluding computationally intensive spherical imagery.**

Vederi's method involves moving a camera along a path to capture a series of images.  A346 at 2:26-28.  Those images, taken from different points along the

path, are used to create a "composite image . . . on a column-by-column basis by determining which of the acquired images contains the desired pixel column, extracting the pixels associated with the column, and stacking the columns side by side." A326. In other words, flat, vertical columns are "combined" to form a composite image. A348 at 6:2-19; *see also* A350 at 9:19-30; A1923 and related text; A1729-30.

Figure 2 in the patents is "an illustration of a composite image" comprised of various images taken by a camera "moving along an x-axis . . . direction." A348 at 5:55-57.



Fig.2

A329.  This "composite image depict[s] a view of the objects from a particular location outside of the path" of the camera.  A346 at 2:33-35.  As Figure 2 indicates, the patented method shows the view from "a fictitious camera 44 . . . behind the actual camera [on the x-axis]."  A348 at 5:57-60.  The process associated with Figure 2 creates a vertical and flat panoramic image, rather than the kind of perspective view a person would see if actually present at the location.  *See id.*  Moving the fictitious camera toward or away from the pictured objects will narrow or widen "the desired field of view."  *Id.* at 5:55-64.

According to the Summary of the Invention, this use of flat images "alleviates" the "deficiencies associated with the prior art" use of spherical imagery.  A346 at 2:17-18.  The specification discusses, for example, dense sampling of an object "on the surface of an imaginary sphere surrounding the object/scene."  *Id.* at 1:65-67.  But they dismiss that approach as "computationally intensive and hence cumbersome and inefficient in terms of time and cost."  *Id.* at 1:67-2:2.

The patents then state that "[t]he present invention addresses and alleviates the above-mentioned deficiencies associated with the prior art."  *Id.* at 2:18-19.  According to Vederi, that passage sought to distinguish the patented method from, for example, U.S. Patent No. 6,097,394 ("Levoy") (A1460-83), which used a

technique called light-field rendering to create spherical images.  A2062; A2189-92.

### 2.    The asserted claims are limited to images that depict "substantially elevations."

The claims cover a method of visual navigation using the composite, panoramic images described in the specification.  *See, e.g.*, A353.  They all require collecting, storing, and retrieving images that depict "substantially elevations." Claim 1 of the '760 patent is representative in this respect:

> retrieving from the image source a first image associated with the first location, the image source providing a plurality of *images depicting views* of objects in the geographic area, *the views being substantially elevations* of the objects in the geographic area, wherein the images are associated with image frames acquired by an image recording device moving along a trajectory.

A353 at 15:65-16:2 (emphases added).

The common specification does not use the critical term "substantially elevations."  Instead, the parties have looked to the well-established meaning of "elevation" in the field of architecture.  *See* A1744; 1748; 1752; *see also* A24.  The ordinary, architectural definition of "elevations" refers to projections "on a plane vertical (at a right angle) to the horizon."  A1748; *see also* A329; A348 at 6:2-19. Under that ordinary usage, an elevation simultaneously positions the viewer at 90 degrees (along the horizontal plane) from every point of the object, as shown in this figure depicting an elevation of a building:

10



A1744.  An elevational image or view is flat.  *See id.*  According to technical and other dictionaries, "elevations" are "geometrical" views depicted "to scale," meaning that straight lines are straight and have the lengths, proportions, and angles with which they were built.  A1748; A1756; A1760.

### 3.   The applicants added the relevant claim language to overcome and disclaim the prior art.

As originally filed, claim 1 recited "storing . . . images providing a non-aerial view of the objects" and "retrieving" those images "from the image database."  A404.  The examiner found those claims anticipated by U.S. Patent No. 6,140,943 ("Levine").  A471 (citing A3269-79).  Levine had disclosed a navigation system that provided mapping as well as "video images including the names and relative locations of a plurality of streets."  A3278 at 9:56-60.  Levine had also disclosed displaying "non-aerial" views of objects and buildings on the map.  A472; A504.

11

In response to the examiner's rejection, the applicants removed the reference to "non-aerial views" and narrowed the claimed images to depictions of "substantially elevations":

> ~~storing a plurality of images in the image database representing objects within the geographic area, the images providing *non aerial views of the objects;*~~
>
> …
>
> retrieving ~~an image corresponding to~~ from the image source a first image associated with the ~~current~~ first location ~~from the image database~~, the image source providing a plurality of images depicting views of objects in the geographic area, the *views being substantially elevations of the objects* in the geographic area, wherein the images are associated with image frames acquired by an image recording device moving along a trajectory[.]

A494 (italicization added). The applicants argued that "none of the images in Levine depict views that are 'substantially elevations of the objects in the geographic area.'" A503-04. The examiner found the amendment "persuasive" and allowed the claims. A525.

In subsequent reexaminations, the Patent Office has rejected every asserted claim in non-final office actions. *See* Non-final Office Action, Control No.

95/000,683 (Nov. 5, 2012) (U.S. Patent No. 7,577,316); Non-final Office Action, Control No. 95/000,681 (Nov. 7, 2012) (U.S. Patent No. 7,805,025); Non-final Office Action, Control No. 95/000,682 (Nov. 7, 2012) (U.S. Patent No. 7,239,760); Non-final Office Action, Control No. 95/000,684 (Nov. 1, 2012) (U.S. Patent No. 7,813,596).

### C.    Procedural History

In this litigation, the district court recognized that the term "substantially elevations" is a "biggy." A177-78.  The parties' claim construction and summary judgment arguments turned on that term's meaning and the differences between spherical and vertical flat images.  *See, e.g.*, A1703-05; A2102-03; A2175-83; A2235-39.

### 1.    The district court construed "substantially elevations" in light of its architectural plain meaning and the disclosures in the specification.

Google argued that the district court should construe "depicting . . . substantially elevations" to mean "vertical flat (as opposed to curved or spherical) depictions of front, back, or side views." A1703.  Google and its expert explained that this construction reflects the plain meaning of "elevations" as well as the specifications' disavowal of spherical imagery in favor of a flat, column-by-column composite image.  *See* A1703-05; A1728; A2235-39. Google supported that argument with excerpts from technical and other dictionaries showing that the

13

well-established meaning of "elevations" in the field of architecture is a projection onto a vertical plane. *See* A1744; A1748; A1752; *see also* A1756; A1760.

Although Vederi agreed that elevation "is an architectural term," A24, it did not cite any technical dictionaries, lay dictionaries, or other technical materials. Instead, Vederi offered a declaration from one of its own principals (also a named inventor) claiming that an elevation is simply a "front, back, or side view[]."[1] A2102; A2175. Under that definition, Vederi argued that the term "substantially elevations" encompasses curved or spherical views and images. A2102-03; A2175-83.

After considering the parties' submissions, the district court held a full-day hearing. At the hearing, Vederi did not dispute the term's plain meaning. Instead, Vederi tried to characterize the issue purely as one of specification disclaimer. *See* A180. Vederi acknowledged that the specification disclaimed the light-field rendering disclosed in the Levoy patent, but asserted that such rendering was limited to inward-looking spherical views (*i.e.*, views of an object located at the center of the sphere), not outward-looking spherical views (*i.e.*, views of a sphere

---

[1]    During the claim construction hearing, Vederi dropped "back" views from its proposed construction since back views of buildings or objects would ordinarily not appear in images of the type at issue in this litigation. A179. Google agrees that "back" views are immaterial to this appeal.

from a single point within it). *See* A182; A2190; A3214. Google responded that Levoy specifically disclosed both types of spherical views. A193; A1460.

The district court adopted Google's proposed construction of "substantially elevations." *See* A193-94. The court agreed with Google that the ordinary meaning of elevation is "flat images." A181. It also noted that the patents do not "disclose[] anything about spherical views." A193-94. The court agreed with Vederi on some of the parties' other interpretive disputes—including Vederi's view that the system servers that store images (rather than user displays) are central to the claimed method steps. *See, e.g.*, A134-35.

The district court and the parties agreed that the transcript reflected the court's construction and that there was no need for a formal written order. *See* A200-01. Noting the extended length of the hearing, the court thanked the parties and explained that it took the extra time to "try to get it right." A201.

### 2. The district court granted summary judgment of non-infringement.

Following the court's claim construction ruling, the parties cross-moved for summary judgment with respect to infringement. Google presented evidence that Street View uses spherical or curved images (containing, therefore, spherical or curved views), necessitating a finding of non-infringement under the district court's claim construction. *See* A2537-41; A2544-46. Vederi devoted much of its briefing to rearguing claim scope. *See* A3194-99. At the summary judgment

15

hearing, Vederi conceded that many views in Street View's spherical images do not infringe under the court's claim construction, but argued that some images and views *appear* flat when presented on a user display.  *See* A18, A25, A29.

The district court found its construction of "substantially elevations" dispositive and granted summary judgment of non-infringement.  *See* A3-10.  The court explained that "Street View 'allows a user to look around inside a spherical virtual environment.'"  A6-7.  It rejected Vederi's position that "the true test is what do you see"—*i.e.*, not whether the images are *actually* flat or spherical, but how a Street View user would perceive them.  A30.  The court explained that, "[w]hen you look out to sea, the surface *appears* to be flat, but we all know it actually curves away from you.  It's somewhat the same in Street View.  While some views may *appear* to be flat . . . they are actually curved, because of the method by which Google takes, processes and displays the images."  A9 (emphasis added); *see also* A2329; A3648-49.

Finally, the district court explained that the "conclusory" and "speculative" testimony of Vederi's expert was "insufficient to raise genuine issues of fact."  A7-8 (alteration and citation omitted).  The court was "persuaded that Street View presents only curved/spherical views, not vertical flat ones."  A6-7.

The district court also rejected Vederi's attempt to recapture spherical images through the doctrine of equivalents.  The court explained that finding

infringement by equivalents would vitiate the disputed claim element by "eliminat[ing] the 'vertical flat (as opposed to curved or spherical)' portion'" of its claim construction.  A9-10.

The district court did not separately address Vederi's motion for summary judgment or the alternative grounds on which Google had sought summary judgment of non-infringement.  The court explained that, in light of its ruling, devoting resources to other issues in the case would be "an exercise in futility." A60.

## SUMMARY OF ARGUMENT

This Court should affirm the district court's claim construction and its grant of summary judgment.

I.A.  The claim construction issue is straightforward.  The parties agreed below that "elevation" is an architectural term of art.  Technical dictionaries consistently define that term to mean a projection of a building or other object "onto a vertical plane."  A1744.  In other words, an elevation presents a specific kind of view—such as one would find in an architectural blueprint—that simultaneously positions a viewer at 90 degrees (along the horizontal plane) from every point of the depicted object.  An elevational view is therefore different from a perspective view, which accounts for the position of the viewer.  Curved or

spherical views are not elevations for similar reasons—they are not 90-degree projections onto a vertical plane; instead, they retain perspective.

The district court's construction—"vertical flat (as opposed to curved or spherical) depictions of front or side views"—embodies this ordinary meaning. By contrast, Vederi proposes a partial construction—"front or side views"—that would rob "elevation" of its essence.

Although the specification never uses the word "elevations," it consistently discloses vertically flat composite images created from vertically flat columns of individual images. That column-by-column approach produces "elevational" views under that term's ordinary meaning, and is incompatible with spherical or curved images. Indeed, the specification expressly disclaims composite images "on the surface of an imaginary sphere," and criticizes the use of such spherical images as "computationally intensive and hence cumbersome and inefficient in terms of time and cost." A346 at 1:66-2:2. Vederi cannot now argue that the claims cover what it previously criticized and disclaimed.

During prosecution, the applicants resolved any remaining doubt on this point by replacing the broad term "non-aerial view" with "substantially elevations" for the express purpose of overcoming the prior art. Vederi's proposed construction would essentially restore the original claim scope, subvert the examiner's reason for allowance, and even invalidate the patent.

B.  Although Vederi says little about the term "substantially elevations," it says a great deal about "view" and "image."  Vederi's arguments concerning those terms are irrelevant and incorrect.  The parties did not dispute the meaning of those terms during claim construction precisely because they are not relevant to the issue presently before this Court.  In any event, contrary to Vederi's argument, the claims inextricably tie "views" to "images" by reciting "images depicting views" that are "retrieved" from an "image source."  A353 at 15:65-16:2.  Thus, Vederi's effort to divide and isolate the two makes no sense; if the stored images are spherical, the depicted views within the images must be as well.

Moreover, the point of Vederi's constructions of these terms is to attempt to shift the claim language's focus from stored images (which depict views, the views being substantially elevations) to the displays on users' computer screens.  As Vederi itself argued (successfully) during claim construction, however, the asserted claims focus on images retrieved from a server, not displayed by a user.  It cannot change its mind now.

II.A.  The district court's claim construction resolves the case because all Street View images are curved or spherical.  Street View immerses the user in a geographic location, allowing the user to look around in any direction as if the user were actually present.  Google creates those immersive images from a series of pictures taken from the same location at the same time, stitched into a composite,

spherical image around a single point.  The result is a real-world, perspective view—not the elevational view required by the claims.

Vederi does not dispute much of this.  It argues only that Street View infringes when a user orients an image at "a zero pitch or horizontal-type camera angle towards the side of the street."  A29.  But even in that particular orientation, the stored images retain perspective and curvature.  Vederi's response—that the curvature may be visually imperceptible to a user—does not dispute the *existence* of curvature and therefore tacitly concedes non-infringement.  Indeed, user displays are irrelevant; all that matters under the claim language is that the stored images themselves have curvature, regardless of whether a projection of the image onto a user display also has curvature, perceptible or otherwise.

B.  Finally, Vederi is estopped from relying on the doctrine of equivalents because it narrowed its claims to avoid prior art and secure allowance.  Moreover, Street View's spherical images are fundamentally different from the claimed images, with their elevational views, because of differences in the method of capturing images, the method of combining images into a composite, and the resulting immersive, real-world, perspective view.

## STANDARD OF REVIEW

This Court reviews a district court's claim construction[2] and grant of summary judgment de novo. *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012); *EnzoBiochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1331 (Fed. Cir. 2010). Claim construction is a question of law, and infringement is a question of fact. *Wavetronix v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1355, 1358 (Fed. Cir. 2009). Summary judgment is appropriate "if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue as to" infringement. *Id.* at 1358 (quoting *Combined Sys., Inc. v. Def. Tech. Corp. of Am.*, 350 F.3d 1207, 1210 (Fed. Cir. 2003)).

## ARGUMENT

The district court's summary judgment ruling turns on two simple points: "substantially elevations" means the depicted views are vertical flat, and Street View does not infringe because it uses curved or spherical images and views, not flat ones. Yet Vederi's brief says little about the dispositive claim term "substantially elevations." Instead, it detours into an esoteric discussion of "views" and "images" that is irrelevant to the district court's construction of

---

[2]    The en banc Court is considering whether to alter the standard of review for claim construction. *See Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, Order at 2, No. 2012-1014, -1015 (Fed. Cir. Mar. 15, 2013). The outcome of that case could affect the standard of review in this one.

"substantially elevations" as being vertically flat. With respect to infringement, Vederi concedes the only relevant point—that Street View's images are curved or spherical, not flat. But Vederi goes on to argue the irrelevancy that, when viewed from a certain angle, the curved images may appear flat on an end user's display screen. Like the district court, this Court should set those diversions to the side and affirm.

## I.   THE DISTRICT COURT CORRECTLY CONSTRUED THE CLAIM TERM "DEPICTING VIEWS . . . THE VIEWS BEING SUBSTANTIALLY ELEVATIONS"

The claim term "elevations" is a term of art in the field of architecture that means vertical flat depictions. The specification and the prosecution history support that meaning by disclosing only the use of vertical flat columns with the patented invention while disclaiming spherical images. Vederi has not even proposed a plausible alternative meaning.

### A.   The Intrinsic And Extrinsic Evidence Support The District Court's Construction.

#### 1.   "Elevations" is an architectural term of art that designates a flat, non-perspective view of an object.

The ordinary meaning of "elevations" is dispositive. *See Thorner*, 669 F.3d at 1365. As the district court recognized, that meaning is "flat images." A181.

Vederi conceded that elevation "is an architectural term." A24. Because the patents' specification never uses the word "elevations" (which was added to overcome a prior art rejection), it is "entirely appropriate" to consult technical

"dictionaries . . . to aid in arriving at the plain meaning of [the] claim term." *Helmsderfer vs. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1317-18 (Fed. Cir. 2005) (en banc). Google cited several technical dictionaries, all of which consistently define elevation as a projection of a building or other object "onto a vertical plane," A1744, or "on a plane vertical (at a right angle) to the horizon," A1748. *See also* A1728; A1752; A1756; A1760.

An elevation is therefore a specific kind of view—essentially what one would expect to see in an architectural blueprint. It simultaneously positions the viewer at 90 degrees (along the horizontal plane) from every point of the object. *See* p. 10, *supra.* It is "geometrical" and depicted "to scale"—meaning that straight lines are straight and have the lengths, proportions, and angles with which they were built. A1748; A1756; A1760. An elevation also shows only a single face of a depicted object. *See e.g.*, A1744; A1748; A1752. A frontal view of a building that includes part of its side is not an elevation. *See id.*

Thus, as Vederi agreed before the district court, "[p]erspective view would not be covered by the claims." A25. Perspective accounts for the position of the viewer, for example, the viewer's angle of view and distance from objects in the scene. For example, whereas an elevation of a rectangular building would have dimensions exactly proportionate to the dimensions of the building, a perspective

23

view, such as a photograph taken from eye-level in front of the building, would show the top of the building narrower than the bottom because it is farther away from the viewer or camera. Similarly, to the extent that neighboring buildings appear in the same photograph, they would be viewed at an angle relative to the position of the camera. *See* pp. 5-6, *supra*. Such views cannot be elevations because the view is not at a 90-degree angle (along a horizontal plane) from a fixed distance. *See, e.g.*, A1744; A1748.

Curved or spherical views are, by their very nature, not "elevations" because they are not projections of objects onto a vertical plane. As Vederi admits, "[a] curved view is one where straight lines in the scene being viewed appear curved," and "[i]n a spherical view lines that are straight in the scene being viewed are curved as they would appear on a sphere." Vederi Br. 32. In other words, they have perspective.

As the district court held, therefore, the plain and ordinary meaning of "elevations" refers to "vertical flat (as opposed to curved or spherical) depictions . . . ." A193-94. In 72 pages of briefing, Vederi devotes *one sentence* to this crucial point. *See* Vederi Br. 27. Vederi cites no contrary dictionary definitions, technical or otherwise. Nor does it cite any intrinsic evidence of the term's ordinary meaning, or any intrinsic evidence indicating that the inventors defined the term to mean something different from its ordinary meaning.

24

Instead, Vederi cites, without explanation, a declaration of one of the named inventors, who is also a principal of Vederi. *See id.* (citing A2202-03). "[A]n inventor's self-serving statements" (particularly those of an *interested* inventor) are irrelevant to claim construction. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 n.3 (Fed. Cir. 2008). In light of the public-notice function of claims, applicants' subjective views that they withheld from a patent's specification are as irrelevant as they are unreliable. *See id.* Especially so here, where the declaration is just as conclusory as Vederi's brief. Vederi has done nothing to refute the district court's understanding of the term's plain and ordinary meaning.

Moreover, Vederi's proposed construction is at best a partial construction that would rob "elevation" of its very essence: a non-perspective, two-dimensional view depicted as if the viewer were simultaneously positioned at 90 degrees (along the horizontal plane) from *every* point of the object. If "substantially elevations" simply meant views of the "front or side" of buildings or other objects, there would be no reason to use the term of art "elevation" at all.

Vederi's arguments are especially puzzling in view of its admission that a "vertical flat view refers to a flat view where the viewer is looking horizontally," a definition that essentially mirrors that of the architectural term, "elevation." Vederi Br. 31. The term's ordinary meaning is inescapable.

### 2. As reflected by the claims, the common specification disclaims spherical imagery, which was known in the prior art.

The patents' specification never uses the word "elevations" and certainly does not purport to redefine it. What the specification does say, however, supports the district court's construction. The specification discloses vertical flat views of objects and specifically disclaims spherical imagery.

For example, Figure 2, discussed above, shows a vertically flat representation of a commercial street created by combining vertical flat columns. *See, e.g.*, A348 at 6:2-19. That, in a nutshell, describes the composite images at the heart of the patented method. Combination of columns may confer various advantages, *see* pp. 7-9, *supra*, but it never produces anything other than flat images or views. *See* A348 at 5:55-64.

In fact, the vertical-column approach is *incompatible* with spherical or curved images. Columns are, by their nature, vertical and flat. *See* A1724-25. Curved images (which can be combined to create spherical composite images) cannot be used for such column-by-column stacking. *See* A165; A1705; A1730. In addition, spherical images depict views of objects from a location *on* the path of the camera that captures the images—not from a location *outside* that path, as the patents require. *See* A1730; *see also* A2567-68, A3364-68.

Despite the specification's exclusive focus on flat panoramas, Vederi contends that the patents "disclose curved panoramas" by referring to a duodecahedron of cameras, cameras with "fish-eye" lenses, and (in the provisional application) a 360 degree view around a single plane. *See* Vederi Br. 40; *see also* A348 at 5:1-10. None of this discloses the use of curved panoramas in the patented invention. Google's expert explained that curved lenses are fundamentally incompatible with the specification's method of creating composite images because "joining vertical columns from fish-eye views . . . would form highly distorted composite images." A2250. To the extent the specification discloses taking flat images in a 360 degree circle or by a duodecahedron of cameras, that is consistent with the specification's approach of making flat, composite images (such as in Figure 2). *See, e.g.*, A329; A350 at 10:1498; A346 at 23:25; A351 at 11:29-31; *id.* at 12:49-51. It might also allow a user to access flat images of a view in a different direction than toward the side of the street. A2251; *see also* A3066-71. But none of those disclosures has anything to do with *spherical* or *curved* images and views.

As the district court observed, therefore, the patents do not disclose the use of spherical views in the patented invention. A193-94. That does not mean, as Vederi asserts, that the court held that claims are necessarily limited to the embodiments disclosed in the specification. Instead, the specification's description

of the invention helps clarify and confirm the claim language's ordinary meaning. *See Trading Techs Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1353 (Fed. Cir. 2010); *Edwards LifeSciences LLC v. Cook Inc.*, 582 F.3d 1322, 1329 (Fed. Cir. 2009).

Even if the patents' common specification described spherical panoramas, they would not be covered by Vederi's claims.  "[E]very claim need not contain every feature taught in the specification," *AllVoice Computing PLC v. Nuance Commc'ns., Inc.*, 504 F.3d 1236, 1248 (Fed. Cir. 2007), especially when the applicants disclaimed that feature.  If Vederi "disclose[d] but decline[d] to claim [spherical panoramas], this action dedicate[d] that unclaimed subject matter to the public." *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002) (en banc) (per curiam).

Significantly, the specification disclaims composite images "on the surface of an imaginary sphere," and criticizes the use of such spherical images as "computationally intensive and hence cumbersome and inefficient in terms of time and cost." *See, e.g.*, A346 at 1:66-2:2.  Having criticized and disavowed spherical imagery in the specification, Vederi cannot now argue that the patent claims such images.  "Where the general summary or description of the invention describes a feature of the invention . . . and criticizes other products . . . that lack the same feature, this operates as a clear disavowal of these other products . . . ." *Edwards Lifesciences*, 582 F.3d at 1333 (citation omitted).

Vederi says nothing about the specification's explicit disavowal.  In the district court, Vederi's tortured argument was that the patents disclaimed light-field rendering, not spherical imagery, but not all light-field rendering (only the inward-looking version).  *See* A346 at 1:62-2:2; A181-83; A448; A2062; A2189-90.  But the patent never even refers to light-field rendering; it criticizes imagery "on the surface of an imaginary sphere surrounding the object/scene," *i.e.*, spherical images.  A346 at 1:65-67.

In any event, "light-field rendering" relates to spherical images.  Vederi admits that phrase refers to U.S. Patent No. 6,097,394 ("Levoy") (A1460-83), which the applicants cited during prosecution.  Vederi has tried to limit Levoy as referring only to a "giant bubble" with "cameras all around"—that is, only to inward- but not outward-looking spherical imagery.  A182.  But Levoy refutes that mischaracterization, disclosing that "[a] sampled representation for light fields allows for both efficient creation and display of *inward and outward looking views*."  A1460 (emphasis added).  By disclaiming Levoy, the patents disclaim both approaches.  *See* A193.

For all of these reasons, an understanding of what Vederi actually invented and disclosed in the common specification confirms the ordinary meaning of "substantially elevations."  *See Renishaw PLC v. MaripossSocieta' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998).  The very point of Vederi's method is to avoid

the cumbersome and supposedly inefficient use of spherical imagery.   A346 at 2:18-19.

### 3.    Vederi narrowed its claims during prosecution to avoid prior art.

If more were needed, the applicants limited their claims to "substantially elevations" during prosecution for the express purpose of overcoming the examiner's rejection of the claims based on prior art.   The prosecution history therefore provides yet another reason to affirm the district court's construction. *See Phillips*, 415 F.3d at 1317.

The named inventors initially sought broad claims covering "images providing a *non-aerial view* of the objects."   A404 (emphasis added).   The Patent Office rejected those claims as having been anticipated by U.S. Patent No. 6,140,943 ("Levine") (*see* A494).   In response, the applicants amended their claims by removing "non-aerial view" and replacing it with the current language requiring depictions of "substantially elevations."   A494.

That amendment is important for two reasons.   First, it makes clear that "substantially elevations" is different from and narrower than "non-aerial views," and thereby disclaims non-aerial views other than substantially elevations. Construing "elevations" more broadly than its ordinary meaning would defeat the amendment and restore much if not all of the disclaimed claim scope.   If there is a

relevant difference between non-aerial views and Vederi's overbroad proposal of front or side views, it is a subtle one.

Second, the applicants narrowed the claims to overcome Levine, specifically arguing that "none of the images in Levine depict views that are 'substantially elevations of the objects in the geographic area.'" A504. Thus, the difference between Levine and the patents-in-suit is the difference between non-aerial views and "substantially elevations." A broad construction that effectively undoes the addition of this critical limitation would be inconsistent with its express purpose to overcome the examiner's rejection based on Levine. And, for essentially the same reasons, it would invalidate the patent under Levine and other prior art.

As the district court recognized, courts must "construe the claim language in a way that doesn't make it obvious or lacking in novelty." A27. In Google's view, these claims are invalid regardless of the claim construction. And the canon favoring claim constructions that preserve a claim's validity is narrow. *See Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 690 (Fed. Cir. 2008). But if that canon ever applies, it must apply here, where *departing* from the plain meaning would impermissibly broaden the claims and threaten their validity by undoing an amendment specifically made to overcome prior art.

## B.    Vederi's Criticisms Of The District Court's Construction Are Misplaced.

### 1.    Vederi's efforts to redefine "views" and "images" are irrelevant and incorrect.

Vederi repeatedly argues that the district court "confused" the terms "view" and "image"—two terms that the parties did *not* dispute during claim construction. Vederi Br. 23, 47. This argument is a distraction. Vederi argues (incorrectly) that the district court erroneously granted *summary judgment* because it "conflated 'images' with 'views.'" *Id.* at 24. But Vederi never argues that the purported distinction between views and images has any bearing on whether "elevations" must be "vertical flat (as opposed to curved or spherical) depictions of front or side views," as the district court determined, or all front or side views, as Vederi proposes. *See id.* at 23-27. Vederi instead argues that this Court should construe those terms "in addition to" that language. *Id.* at 27. This argument therefore provides no basis to alter the district court's construction of the relevant claim term.

Nor, as further discussed in Section II, *infra*, does it have any bearing on the court's grant of summary judgment based on that claim term. Vederi insists that the claims focus on the picture on a user's computer screen, and that when viewed from a specific angle on a screen, Street View may appear flat. Vederi is wrong on both points. The claimed images are stored images "retrieve[d] from" and

"provid[ed]" by an image source; they are *not* the pictures on a user display. *See, e.g.*, A353 at 15:64-65. Indeed, a user display has nothing to do with Vederi's claimed creation of an efficient way to capture, process, create, and store images. A3598-99. If the retrieved images are spherical and curved, the views they depict are also spherical and curved. *See* pp. 38-41, *infra*. Contrary to Vederi's arguments, a spherical image remains spherical regardless of the vantage point from which one looks at it, just as a ball is round no matter how one looks at it. A2546; A3166-68. Vederi's definitions of images and views are therefore irrelevant to the issues on appeal.

Unasserted claim 3 of the '760 patent removes any doubt by reciting the displaying of the retrieved image on an end-user's computer screen. A353. Under fundamental canons of claim construction, that separate limitation in an unasserted, dependent claim confirms that what is perceived by the end-user on a computer display is a different question addressed by that different limitation; it is irrelevant to the images "depicting views . . . the views being substantially elevations" limitation. *See Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1348 (Fed. Cir. 2012).

Indeed, Vederi itself argued successfully during claim construction that the claims focus on images retrieved by a server, not displayed by a user. A82-119; A2091-94; A2164-69. Having prevailed on that position for one purpose, it is now

estopped from flipping its past position for its present purpose. *See Metabolite Labs., Inc. v. Lab. Corp. of Am.*, 370 F.3d 1354, 1364 (Fed. Cir. 2004).[3]

Moreover, Vederi's litigators have pulled their proposed definitions of "images" and "views" from the ether. *See* Vederi Br. 25, 26. A patentee is free to create special meanings for claim terms if it clearly discloses those meanings in the specification. *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 493 F.3d 1358, 1361 (Fed. Cir. 2007). The applicants did no such thing.

Vederi defines the word "image" to mean two things: "a visual display of a view on a surface such as a computer screen" and "the stored data that is used to create the visual display." Vederi Br. 25. Both proposed definitions depart from the term's ordinary meaning, run afoul of the clear claim language by tying the claimed images to display screens, and lack support in the intrinsic evidence. Vederi's second proposed meaning of "image" has the additional vice of creating more issues than it resolves. For example, there is no indication of what stored data is being referred to, or how much data would be sufficient to be characterized as an image. In other words, Vederi seeks a special but ambiguous meaning prone to strategic application.

---

[3] Claim 21 of the '316 patent recites "outputting the first image onto an image display device." A601 at 17:9. That, too, refers to the stored and retrieved image, not to the display itself.

Vederi asserts that "view" means "the appearance of a scene from a particular location looking in a particular direction." Vederi Br. 26. As with "image," Vederi is making up its own definition without intrinsic support. Moreover, the claim language itself makes clear that "views being substantially elevations of the objects" are depicted in "images" retrieved from an "image source." A353 at 15:63-16:2. Because the views are contained in the stored and retrieved images, they cannot be decoupled from the retrieved "image" that "depicts" the view. But in Vederi's proposed construction, an "image" somehow bears no relationship to the "views" depicted in it. Instead, as with its proposed definition of "image," Vederi's proposed construction of "view" attempts to sweep in concepts of visual display. As explained above, the visual display is not relevant to the meaning of "image" or "view." A82-119; A2091-94; A2164-69.

### 2. Vederi's other criticisms are off base.

Vederi's other arguments are meritless. Vederi faults the district court for defining "substantially elevations" by "what it is not." Vederi Br. 30. The court's claim construction refers to "vertical flat (as opposed to curved or spherical) depictions of front or side views." *See* A193-94; A1703. Vederi evidently believes that the court should have stopped at "vertical flat" depictions, and not gone on to include the clarifying phrase "as opposed to curved or spherical" depictions. But after defining elevations as what it is (vertical flat depictions),

35

there was nothing wrong with clarifying the term's meaning by also including language of exclusion—especially considering that the clarifying language squarely addresses the parties' interpretive dispute. *See Saffran v. Johnson & Johnson*, _ F.3d _, 2013 WL 1338910, at *8 (Fed. Cir. 2013); *Pause Tech. LLC v. Tivo Inc.*, 419 F.3d 1326, 1333 (Fed. Cir. 2005).

Vederi proves the point by also arguing that the district court never defined a vertical flat view. *See* Vederi Br. 17, 30. The clarifying language discussed above clearly addresses this very point by distinguishing flat from spherical views. Everyone understood the difference between flat and spherical views because that was the focus of the relevant proceedings below. And even if there were some ambiguity, it would be a creature of *Vederi's* belated attempt to re-orient the claims toward a user display rather than the images as they were collected, stored, and retrieved.

Vederi also argues that the district court's construction fails to give meaning to the modifier "substantially." *See* Vederi Br. 23. That too is wrong. The word "substantially" simply reflects the fact that a photograph cannot realistically *replicate* a true "elevational view" because the camera would have to be located horizontally at 90 degrees from every point on the target object—a physical impossibility absent an absurdly large camera. *See, e.g.*, A1744; A1748; A1752. A photograph or a composite of several photographs can *approximate* an elevation,

however. The patent claims account for this difficulty by requiring "substantial[]" elevations—allowing slight deviation from a 90-degree view—instead of true elevations akin to architectural blueprints. *See* pp. 10-11, *supra*.

The patents' allowance for the realities of real-world image capture has no bearing on the meaning of "elevations"—and certainly cannot serve as a backdoor means to expand the claims to cover curvature. The patent applicants disclaimed spherical images; reading the adverb "substantially" to disclaim that disclaimer would make a mockery of the ordinary meaning of "elevations," the specification, and the prosecution history, as discussed above. *See Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers.").

## II.  THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT OF NON-INFRINGEMENT

The district court's grant of summary judgment follows inescapably from its construction of the "depicting views . . . the views being substantially elevations" claim term. The claims cover only vertical flat views, not curved or spherical ones. But Street View provides *only* curved or spherical images and views, not flat ones. Indeed, the functionality and purpose of Street View differ fundamentally from Vederi's claimed invention.

**A.    Street View Does Not Depict Views That Are Substantially Elevations.**

Street View does not collect, store, or retrieve vertical flat images, and does not depict vertical flat views.  Indeed, there is no dispute that Street View utilizes spherical images.  *See* A2546; A2557-60.

From the moment images are collected using an array of curved lenses, the images in Street View are curved.  *See* A2567-68.  Google collects multiple pictures taken from the same location at the same time, with overlapping edges, ensuring that no portion of the spherical view is excluded from the collection of captured images.  *See* A2567-70.  This information is then organized and processed using proprietary and complex algorithms to create the spherical images ultimately provided to the user.  *See* A2568.  To facilitate storage of these composite, spherical images, Google then cuts each image into tiles, with each tile representing a small portion of the total spherical image.  Just as the composite images as a whole are spherical, the portions of those images on the tiles are curved.  *See* A2569-71.

Street View distributes these spherical images at intervals on streets so that, while there is not a straight-on view of every house or building on a given street, a user would be able to navigate the entire surroundings of a particular location by moving from sphere to sphere.  *See* A2571.  This helps orient the user to unfamiliar locations by virtually immersing the user into the location, and allowing the user to

"look around" the area, almost as if the user were actually there.  *See* A2572-73. At all times, the user is virtually "present" at the center of a virtual sphere—the location from which the individual photos that make up the sphere were created. *Id*.

As discussed above, the only images and views relevant to the claims are those *stored* by Street View, not those appearing on a user's computer screen.  *See* pp. 32-34, *supra*.  Even if the user display were relevant (which it is not), the views contained in Street View's spherical images have curvature corresponding to the virtual sphere from which they originate.  *See* pp. 4-6, *supra*.

Projecting a spherical image onto a two-dimensional display causes distortions in the resulting views due to the curved nature of the image.  Consider, for example, a globe, which Vederi admits is a spherical image.  Vederi Br. 34. When a globe is projected onto a two-dimensional display, the resulting oceans and continents are distorted—their portrayal is not proportionally correct.  The only way to correct the distortion of the oceans and continents is to introduce curvature into the grid on which the map rests (the latitude and longitude lines).  Thus, to obtain proportionally correct views from a spherical image, the views must also be curved.  *See* A3421-23; A3631-32.  In the same way, when a Street View spherical image is projected onto a two-dimensional display, the resulting panorama contains curvature.  *See* A2537-40; A2568-71.

Because the views depicted in two-dimensional Street View images are curved, they also contain perspective. If the user "looks" down a long street, objects closer to the user's virtual location will appear larger than those farther away. For example, when looking down a commercial street in Street View, the near side of a rectangular building will look taller than the far side of the same building, even though the two sides really have the same height. That is important because, as discussed above, an "elevation" has no perspective. *See* A1728; A1744; A1748; A1752; A1756; A176; p. 23, *supra*.

In the image below, for example, a portion of a stored spherical image is selected for projection onto the two-dimensional display for viewing:



A3169. Because the source image is curved, projecting the image onto a two-dimensional display introduces distortion in the resulting views that reflect the curvature of the original image. As a result of this distortion, lines that are straight in real world objects within the field of view will be slightly curved when viewed by Street View users. *See* A2569-71. This curvature remains present (even if not readily apparent to the user) despite Google's attempts to ameliorate it. Both images and views in Street View as sent to the user display are, therefore, curved. A2567-73.

### B.    Vederi Incorrectly Contends That A Subset Of Views Depicted By Street View Images Are Flat.

For the most part, Vederi agrees with this non-infringement analysis. It conceded in the district court that Street View does not infringe "with every view." A18. Vederi contends that Street View infringes only when it shows "a zero pitch or horizontal-type camera angle towards the side of the street." A29. Even in that limited circumstance, however, Street View's images remain spherical and the views retain perspective.

Vederi contends that the curvature is imperceptible in this circumstance, and the "presence of imperceptible curvature" does not preclude infringement. Vederi Br. 46. In other words, Vederi does not dispute the *existence* of the curvature, only its *perceptibility* in limited circumstances. That is dispositive because the claims exclude images depicting curved views, without regard to viewers' perceptibility.

41

*See* A3631-32.  As the district court correctly recognized, curvature is curvature, whether an end user perceives it or not.  *See* A9.  And as explained above, the asserted claims concern images (and their depicted views) as they are stored and retrieved—not as they might be perceived by a user.  *See* pp. 32-34, *supra.*

Vederi's I-know-it-when-I-see-it test for curvature would also raise a host of practical problems and render the claims indefinite.  Perceptibility could vary based on an individual user's eyesight, the size and resolution of the screen the user was viewing, and any number of other real-world factors.  Thus, it is at best unclear how to determine whether curvature is perceptible or imperceptible for this purpose, and the patent offers no guidance on that question precisely because it does not distinguish between perceptible and imperceptible curvature.  Because Vederi's perception-based test is ultimately a subjective one that could vary from person to person, it would render the claims indefinite.  *See, e.g.*, *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1351-56 (Fed. Cir. 2005).

Moreover, the notion that a "zero pitch" view infringes, but that the *infinite number* of other ways a user can orient the display do not infringe, makes little sense.  The immersive nature of Street View images and the ability to navigate at any angle are not separate features—they are the reason those images do not depict "elevations" in the first place.  Elevations simultaneously position the viewer at 90 degrees (along the horizontal plane) from every point of an object.  *See* p. 10,

*supra*.   Street View does not; it creates a real-world perspective, as Vederi concedes.   *See* Vederi Br. 14.   Perspective is the *essence* of Street View; it is *anathema* to Vederi's elevational views.

Vederi confirms the flawed nature of its arguments by basing its infringement allegations on a comparison of its own product to Street View.   *See* Vederi Br. 47-49.   This Court has held repeatedly that such an analysis is improper. *See, e.g.*, *Johnson & Johnson*, 285 F.3d at 1052.   "Infringement is determined on the basis of the claims, not on the basis of a comparison with the patentee's commercial embodiment of the claimed invention."   *Int'l Visual Corp. v. Crown Metal Mfg. Co.*, 991 F.2d 768, 772 (Fed. Cir. 1993) (citation and quotation marks omitted).

Moreover, Vederi's comparison is at best superficial:  a visual comparison of images from Street View and its own product that embodies the patented invention.   *See* Vederi Br. 47-49.   But the discrete images combined within the composite recited in the patents and used by Vederi's products (which practice the patented invention) are all flat, *see* A52; pp. 8-9, *supra*, whereas Street View's images, as well as the composites of those images, are spherical (perceptibility aside), *see* pp. 4-6, *supra*.   *That* is the relevant technological difference for infringement purposes—not a visual comparison.

43

Indeed, the examples that Vederi provided of these products, which are reproduced below, show that the images in Vederi's products are composite panoramas from a single direction of view.



**A2202-03 (Vederi's 2001 "Street Browser")**



**A220 (Vederi's "Scout Tool"; Provisional Application Fig. 11)**

When a user of Vederi's products pans to the left or right, the user is met with a frontal view of a different portion of the side of the street. *See, e.g.*, A352 at 13:24-34. That is fully consistent with the claimed requirement of "elevational" views of the buildings in the scene.

By contrast, Street View does not provide wide-angle views of portions of city blocks. It provides spherical images taken at discrete locations, each of which provides users with an immersive viewing experience such that the user can feel physically present at the location. A2567-73. As a consequence of Street View's immersive design, panning left or right in Street View does not change the

"location" of the user or the width of view, but rather changes only the *angle* of the field of view. *See* pp. 5-6, *supra.* So, rather than shifting the user's virtual position left or right to maintain a head-on view of storefronts (as in Vederi's products), Street View leaves the user at the same virtual position and instead turns the user's "head" to look up or down the street, at the sky, or anywhere else. *See* pp. 5-6, 38-39, *supra.*

### C.    Street View Does Not Infringe Under The Doctrine Of Equivalents.

Vederi briefly contends that Street View infringes under the doctrine of equivalents. *See* Vederi Br. 52-54. But Vederi's analysis of the function-way-result test for equivalents is *one sentence* in length, with no citation to any evidence whatsoever. *See id.* at 53. Vederi forfeited that skeletal argument by not sufficiently briefing it. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (citing cases). Similarly, a party relying on equivalents may not rely only on attorney argument (of any length); it must present "particularized testimony and linking argument." *Cephalon, Inc. v. Watson Pharms., Inc.*, 707 F.3d 1330, 1340 (Fed. Cir. 2013). Vederi has not.

In any event, the district court's ruling was correct for several reasons. *See* A9-10. *First*, the doctrine of prosecution history estoppel bars Vederi's reliance on equivalents. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 30 (1997). As discussed above, Vederi amended its claims during prosecution for

45

the express purpose of securing allowance. *See* p. 12, *supra*. "When the patentee responds to [a] rejection by narrowing his claims, the prosecution history estops him from later arguing that the subject matter covered by the original, broader claim was nothing more than an equivalent." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 726 (2002). Vederi cannot now use the doctrine of equivalents to recapture claim scope it surrendered for patentability reasons. *See Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1141 (Fed. Cir. 2004) (en banc).

*Second*, and related, the common specification unequivocally disavows spherical images. For that reason as well, Vederi "cannot now invoke the doctrine of equivalents" to re-claim the disclaimed material. *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1345 (Fed. Cir. 2001); *see also Edwards Lifesciences*, 582 F.3d at 1335-36; *Asyst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005) (citing cases). The applicants' narrow drafting of the claims themselves, to implement this disavowal by adding the "substantially elevations" limitation, further precludes reliance on equivalents. *See Wm. Wrigley Jr. Co. v. Cadbury Adams USA, LLC*, 683 F.3d 1356, 1366 (Fed. Cir. 2012); *see also Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003).

*Third*, the differences between Street View and the claimed invention are "clear" and "substantial," not "subtle difference[s] in degree." *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1360 (Fed. Cir. 2005). Vederi has not come close to showing that Street View "performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product." *Wavetronix*, 573 F.3d at 1360. Instead, as the district court found, Vederi would vitiate the "substantially elevations" claim limitation. A9-10.

The function of the claimed invention is to provide wide-angle, multi-perspective, vertical flat composite panoramas that simultaneously display views from numerous different adjacent locations along a given path of travel. In contrast, Street View's function is to provide spherical composite images that selectively provide views from a single location, allowing the user to "look around" as if the user is standing in the location of the spherical image. Street View provides users with an approximation of what it would be like to physically stand at a particular location, with the ability to look around, up, down, and to either side—not just a distortionless, wide-angle, panoramic view of one side of a street, as in the claimed method. *See* pp. 5-6, 38-39, 45 *supra.*

Street View and the claimed invention perform their respective functions in significantly different ways. The claimed invention involves collecting a series of

flat images from adjacent locations, separating those images into vertical columns, and splicing those columns together to create a composite. *See* pp. 8-9, *supra*. By contrast, Street View collects curved images from an array of cameras at a single location, stitches these images together into a spherical composite, and divides the composite into curved tiles. *See* pp. 4-6, *supra*.

Finally, the results of these two methods are not remotely similar. Vederi's claimed methods produce elevational views that are head-on from an angle of approximately 90 degrees to the vertical plane on which the objects are projected. *See* p. 26, *supra*. Street View virtually immerses users within a spherical image, with the ability to "look" in any direction and at any angle. *See* p. 5, *supra*. "That is a fundamental difference between the accused systems and the claimed invention that goes to the heart of the claimed invention." *Tech. Patents LLC v. T-Mobile (UK) Ltd.*, 700 F.3d 482, 500 (Fed. Cir. 2012). To provide a higher-quality product, Google uses the very approach the applicants considered to be too "computationally intensive and hence cumbersome and inefficient in terms of time and cost." A346 at 1:67-2:2.

### D.    Vederi's Conclusory Expert Declaration Adds Nothing.

Vederi contends that the district court should have credited its expert's declaration. *See* Vederi Br. 54-55. As the district court found, however, that declaration "offers 'conclusory, speculative testimony.'" A7-8 (citing *Seremekun*

*v. Thifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007)).  While "Google's expert support[ed] his opinion with specific facts regarding Street View's process," Vederi's expert presented no facts or other support for his conclusory argument that Street View practices the patented invention.    A8; A2567-73.    Such "conclusory expert assertions do not give rise to a genuine issue of material fact." *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1290 (Fed. Cir. 2012); *accord Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1001 (Fed. Cir. 2008).

Vederi contends that Dr. Ripley's declaration was "based on his experience in the graphics industry and on principles well known in that industry."  Vederi Br. 55.    Vederi cites nothing for that proposition—essentially piling its own conclusory contention on Dr. Ripley's.    In any event, neither Dr. Ripley's "experience" nor unidentified "principles" in the industry are evidence of how Street View actually operates.  Dr. Ripley's declaration therefore adds nothing to Vederi's attorney argument, and his conclusion is wrong for all of the reasons explained above.

## III.    VEDERI IS NOT ENTITLED TO SUMMARY JUDGMENT

For the reasons explained above, this Court should affirm the district court's grant of summary judgment to Google based on the "substantially limitations" claim term.    Alternatively, the Court should remand for the district court to

consider in the first instance the other issues raised by the parties' respective motions for summary judgment.

There is no reason to entertain Vederi's extraordinary request for entry of summary judgment in its favor on appeal. *See* Vederi Br. 55-71. Even if there were a genuine dispute of fact as to whether certain Street View images are "substantially elevations," that dispute would hardly support entry of judgment in Vederi's favor even as to that claim limitation.

In addition, Google's opposition to Vederi's summary judgment motion identified a series of additional disputes of material fact concerning three other claim elements. *See* A3171-74; A3352; A3364-65. For example, all claims require that the "images are associated with image frames acquired by an image recording device moving along a trajectory." But Street View creates single-perspective images *from one location*. *See* A3364-65. Contrary to Vederi's contentions, the fact that Google uses vehicles to collect images is insufficient to satisfy the claim element because the movement of those cars is irrelevant to the captured images. *See* A3365; *see also, e.g.*, Vederi Br. 60. Similarly, Google demonstrated a disputed issue of fact with respect to the "accessing a web page" limitation in claim 28 of the '025 patent because end user terminals and browsers (not Street View) access the web pages, *see* A3171; A3365; and with respect to the "arbitrary address" limitation in claim 20 of the '316 patent because a Street View

user cannot manually enter a street address to access an image, *see* A3172; A3365-66.

Google supported these arguments with the declaration of a knowledgeable witness, David Martin. *See* A3172-74; A3352; A3364-66. Because the district court rested its decision solely on the "substantially elevations" element, it has not yet evaluated Google's other arguments. This Court should follow its usual practice of permitting the district court to weigh those disputes in the first instance. *See, e.g.*, *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1366 (Fed. Cir. 2012).

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's claim construction and entry of summary judgment in Google's favor.

Respectfully submitted on this 15th day of April 2013.


   /s/ Daryl L. Joseffer
James R. Batchelder            Daryl L. Joseffer
Sasha G. Rao                    KING & SPALDING LLP
Brandon H. Stroy              1700 Pennsylvania Ave., NW
ROPES & GRAY LLP          Washington, DC 20006
1900 University Avenue, 6th Floor    (202) 737-0500
East Palo Alto, California 94303     djoseffer@kslaw.com
(650) 617-4000
james.batchelder@ropesgray.com    Adam M. Conrad
sasha.rao@ropesgray.com          KING & SPALDING LLP
brandon.stroy@ropesgray.com      100 N. Tryon St., Suite 3900
                                 Charlotte, NC 28202
Christopher J. Harnett        (704) 503-2600
Todd M. Simpson           aconrad@kslaw.com
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York 10036-8704
(212) 596-9000
christopher.harnett@ropesgray.com
todd.simpson@ropesgray.com

*Counsel for Appellee*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned certifies that the foregoing brief, exclusive of the exempted portions as provided in Fed. R. App. P. 32(a)(7)(B)(iii) and Fed. Cir. R. 32(b), contains 10,948 words and therefore complies with the type-volume limitations of Fed. R. App. P. 28.1(e)(2)(A)(i).

This 15th day of April, 2013.                /s/ Daryl L. Joseffer
                                             Daryl L. Joseffer

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the foregoing Brief of Appellee via the Court's ECF system to each party's counsel of record.


This 15th day of April, 2013.          /s/ Daryl L. Joseffer
                                        ──────────────────────────
                                        Daryl L. Joseffer