2013-1057, -1296

# United States Court of Appeals
# for the Federal Circuit

VEDERI, LLC,

*Plaintiff – Appellant,*

v.

GOOGLE, INC.,

*Defendant – Appellee.*

———————————

Appeals from the United States District Court for the
Central District of California in No. 10-CV-7747,
Chief Circuit Judge Alex Kozinski, sitting by designation.

———————————

PETITION FOR REHEARING *EN BANC*
OF DEFENDANT-APPELLEE GOOGLE INC.

———————————

Adam M. Conrad
KING & SPALDING LLP
100 N Tryon St., Suite 3900
Charlotte, NC 28202
(704) 503-2600
aconrad@kslaw.com

Daryl L. Joseffer
  *Counsel of Record*
Karen Schoen*
KING & SPALDING LLP
1700 Pennsylvania Ave., NW
Washington, DC 20006
(202) 737-0500
djoseffer@kslaw.com
kschoen@kslaw.com

*Counsel for Appellee*

April 28, 2014

*\*Admitted only in New York; practice
supervised by principals of the firm.*

# CERTIFICATE OF INTEREST

Counsel for appellee Google Inc. certifies the following:

1.  The full name of every party represented by me is:  Google Inc.

2.  The name of the real party in interest represented by me is:  Google Inc.

3.  Google Inc. has no parent corporations and no publicly held companies own 10 percent or more of its stock.

4.  The names of all firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this Court are:

    Ropes & Gray LLP:  Christopher J. Harnett; Todd M. Simpson; Brandon H. Stroy

    Formerly of Ropes & Gray LLP:  Joshua V. Van Hoven; Andrew Koning; Sasha G. Rao

    Bostwick & Jassy LLP:  Gary L. Bostwick; Kevin L. Vick

    King & Spalding LLP:  Daryl L. Joseffer; Adam M. Conrad; Karen Schoen

This 28th day of April, 2014.          /s/ Daryl L. Joseffer
                                        Daryl L. Joseffer

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... ii

STATEMENT OF COUNSEL ................................................................1

INTRODUCTION ...................................................................................2

STATEMENT OF FACTS .....................................................................3

      A.    Google Street View And The Asserted Patents ....................................3

      B.    The District Court Proceedings .........................................5

      C.    This Court's Decision...........................................................7

ARGUMENT ..........................................................................................8

I.    This Court's Treatment Of Amendments Made To Overcome Disallowance Of A Patent Claim Is In Square Conflict With Supreme Court Precedent. ........................................................................8

II.    This Court Has Not Squarely Considered This Conflict.............................12

III.    This Case Illustrates The Importance Of The Question Presented. ..............13

CONCLUSION .....................................................................................15

ADDENDUM

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

*3M Innovative Props. Co. v. Tredegar Corp.*,
  725 F.3d 1315 (Fed. Cir. 2013)..................................................................10

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
  314 F.3d 1313 (Fed. Cir. 2003)..................................................................10

*Bd. of Regents of the Univ. of Tex. Sys. v. BENQ Am. Corp.*,
  533 F.3d 1362 (Fed. Cir. 2008)..................................................................10

*Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*,
  460 F.3d 1349 (Fed. Cir. 2006)..................................................................13

*Enzo Biochem, Inc. v. Applera Corp.*,
  605 F.3d 1347 (Fed. Cir. 2010)..................................................................14

*Exhibit Supply Co. v. Ace Patents*,
  315 U.S. 126 (1942) ........................................................................... 1, 8, 9

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
  535 U.S. 722 (2002) ................................................................... 9, 11, 12, 13

*I.T.S. Rubber Co. v. Essex Rubber Co.*,
  272 U.S. 429 (1926) ....................................................................................9

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
  327 F.3d 1364 (Fed. Cir. 2003)....................................................... 2, 8, 10, 13

*Jansen v. Rexall Sundown, Inc.*,
  342 F.3d 1329 (Fed. Cir. 2003)..................................................................10

*Omega Eng'g, Inc. v. Raytek Corp.*,
  334 F.3d 1314 (Fed. Cir. 2003)............................................................ 11, 12

*Paragon Solutions, LLC v. Timex Corp.*,
  566 F.3d 1075 (Fed. Cir. 2009)..................................................................10

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) .................................................14

*Schindler Elevator Corp. v. Otis Elevator Co.*,
  593 F.3d 1275 (Fed. Cir. 2010)..................................................................10

*Smith v. Magic City Kennel Club, Inc.*,
  282 U.S. 784 (1931) ........................................................................ 1, 2, 9, 10

*York Prods., Inc. v. Cent. Tractor Farm & Family Ctr.*,
  99 F.3d 1568 (Fed. Cir. 1996)....................................................................10

## STATEMENT OF COUNSEL

Based on my professional judgment, I believe the panel decision is contrary to at least the following decisions of the Supreme Court of the United States: *Smith v. Magic City Kennel Club, Inc.*, 282 U.S. 784 (1931); and *Exhibit Supply Co. v. Ace Patents*, 315 U.S. 126 (1942).

Based on my professional judgment, I also believe this appeal requires an answer to this precedent-setting question of exceptional importance:  When a patent applicant amends a claim to overcome the Patent and Trademark Office's ("PTO's") earlier disallowance of the claim, should a court:  (i) presume that the amendment narrowed the claim and strictly construe the amended claim language against the applicant, as the Supreme Court has held; or (ii) presume that the claim scope remained the same except to the extent that the amendment clearly and unambiguously narrowed the claim, as this Court has held?

Date: April 28, 2014                    /s/ Daryl L. Joseffer
                                        Daryl L. Joseffer

## INTRODUCTION

When a patent examiner rejects a claim on the basis of the prior art, the applicant amends the claim to overcome the examiner's reasons for disallowance, and the examiner then allows the amended claim, something important has happened—the applicant has secured a government-granted property right by narrowing the claim.  To permit the applicant to argue later that the amendment did not narrow the claim would wholly undermine the patent-prosecution process.

For that reason, the Supreme Court has long held that when an applicant amends a claim in response to a rejection, the amended claim is presumptively narrower than the original, and the amended language is strictly construed against the applicant.  *See, e.g.*, *Smith v. Magic City Kennel Club, Inc.*, 282 U.S. 784, 789–90 (1931).  This Court, however, has adopted the opposite presumption:  that amendments made to overcome disallowance presumptively do not disclaim the original claim scope, and instead narrow a claim only to the extent that they clearly and unambiguously do so.  *See* slip op. 14; *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1367–69 (Fed. Cir. 2003).

Significantly, this Court first adopted its "clear and unambiguous" rule when considering a different question:  whether a patent applicant's argument that an unamended claim is patentable over a prior-art reference should be considered to narrow the otherwise-applicable claim scope.  When this Court later applied its

"clear and unambiguous" standard to amendments to claim language, the Court does not appear to have considered whether the Supreme Court had precluded that approach. The Court should take this opportunity to reconcile its jurisprudence on this important question with the controlling Supreme Court authority.

This question is exceptionally important for at least two reasons. First, strictly construing an amendment made to overcome rejection upholds the integrity of the examination process by enforcing the condition on which the PTO allowed a patent. Second, when claims are amended during prosecution, the specification typically is not. Thus, reading amended language broadly in light of the pre-amendment specification, while discounting the prosecution history of the amended and issued claims, produces overly broad interpretations that do not properly account for the narrowing amendments.

## STATEMENT OF FACTS

### A.     Google Street View And The Asserted Patents

Vederi asserts that Google Street View infringes Vederi's patented methods for computer-implemented visual navigation. Street View enables users to view and navigate through 360-degree, panoramic imagery of city streets, parks, and other attractions.

To create Street View images, a cluster of cameras located on top of a vehicle takes overlapping pictures in different directions. *See* A2567, 2538, 2568.

3

Google then combines those pictures to provide a spherical, perspective view of what the scene would look like if the user were actually there.  *See* A2539–40; A2568–69.  A Street View user may look in any direction by shifting the viewing angle up to 360 degrees.  *See* A2538; A2571; A2573.

The common specification of the asserted patents explains that virtual navigation had existed for decades.  *See* A346.  To attempt to avoid the extensive prior art in this field, Vederi limited its claims to a specific method of virtual navigation:  collecting, storing, and retrieving images that depict "substantially elevations."  Representative claim 1 of U.S. Patent No. 7,239,760 recites in relevant part:

> retrieving from the image source a first image associated with the first location, the image source providing a plurality of images depicting views of objects in the geographic area, *the views being substantially elevations* of the objects in the geographic area, wherein the images are associated with image frames acquired by an image recording device moving along a trajectory.

A353, at 15:63–16:2 (emphasis added).

As originally filed, the claims had recited, in relevant part, "storing . . . images providing a *non-aerial* view of the objects."  A404 (emphasis added).  The examiner rejected those claims as anticipated by U.S. Patent No. 6,140,943 ("Levine"), *see* A471, which described a navigation system that provided maps as well as "video images including the names and relative locations of a plurality of

streets," A3278, at 9:56–60.  Levine also disclosed displaying "non-aerial" views of objects and buildings on the map.  A471.

In response to the examiner's rejection, the applicants replaced "non-aerial view" with the "substantially elevations" limitation that now appears in every claim.  *See, e.g.*, A494.  The applicants argued that "none of the images in Levine depict views that are 'substantially elevations of the objects in the geographic area.'"  A504.  They also argued that Levine disclosed only maps.  A503–04.  The examiner allowed the amended claims.  A525.

The phrase "substantially elevations" appears nowhere in the asserted patents' common specification; the applicants used it for the first time in the amended claims.  The specification does, however, describe a method designed to produce vertical flat views.  The method essentially involves taking pictures at different points along a path, and putting those pictures, each of which depicts a vertical column, next to each other.  A346.  The image that results from stitching the columns together depicts the scene from only a single direction of view.  A user can see only a frontal view of the same side of a street, for example, not a 360-degree spherical view from a single location.  *See, e.g.*, A352.

## B.    The District Court Proceedings

The parties agreed that the patents borrow the term "elevation" from the field of architecture.  A24.  Within that field, an "elevation" is a projection of a

5

building or other object "onto a vertical plane"—essentially what one would expect to see in an architectural blueprint. A1744. Unlike curved or spherical views, such flat views lack perspective; it is as if the viewer were simultaneously positioned at a 90-degree angle from every point on the depicted object. *See* A1748.

In light of this architectural definition, Google proposed to construe "depicting . . . substantially elevations" to mean "vertical flat (as opposed to curved or spherical) depictions of front, back, or side views." A1703. Vederi proposed to construe the term to mean "front, back, or side views," without limitation. A2102. Both parties later agreed to exclude "back" views because there are no back views in the patented invention. A179. As a result, the parties' dispute boiled down to whether the claims cover all front or side views—which would encompass all "non-aerial views" in this invention—or only vertically flat, as opposed to spherical, views.

The district court agreed with Google. *See* A193–94. The court cited the ordinary meaning of "elevation" in the relevant art as "flat images," A181, and noted that the patents do not "disclose[] anything about spherical views," A193–94. Because Street View displays only spherical, perspective views, *see* A2539–40; A2568–69, the district court granted Google's motion for summary judgment of non-infringement. *See* A9. The court also rejected Vederi's attempt to recapture spherical images through the doctrine of equivalents. A9–10.

6

### C.    This Court's Decision

A panel of this Court reversed.  It agreed that "elevation" is an architectural term, but admonished the district court for relying on architectural dictionaries to determine the term's meaning.  Slip op. 9–10.  The panel emphasized that the claims refer to "substantially elevations," not just "elevations."  *Id.* at 10.  As the panel explained, Google had argued that "substantially" reflects the fact that a photograph cannot realistically replicate a true elevation because the camera would have to be as tall as the object being photographed to create a completely flat view; thus, "substantially elevations" allows a slight deviation from a strict elevation view to account for the realities of image capture.  *Id.* at 11.  The panel concluded, however, that the district court had "effectively read[] 'substantially' out [of] the claims" because, under its interpretation, "'substantially' has no independent operative effect other than" the one identified by Google.  *Id.* at 10, 11.

Having set aside the term's ordinary meaning, the panel noted the specification's brief description of "a fish-eye lens," which, the court stated, produces "a curved, as opposed to vertical, projection, and almost certainly reflects curvature and perspective."  *Id.* at 11.  The panel rejected the district court's construction because it "does not account for" what the panel called "the fish-eye lens embodiment" in the specification—a specification drafted *before* the claims were amended to include the "substantially elevations" limitation.  *Id.*  For those

reasons, the panel concluded that the "substantially elevations" limitation "do[es] not exclude curved or spherical images depicting views that are substantially front or side views of the objects in the geographic area." *Id.* at 14.

Neither the applicants' amendment of the claims to use the phrase "substantially elevations" instead of "non-aerial view," nor the applicants' argument to the examiner that the Levine reference is distinguishable, affected the panel's view of the correct claim construction. *See id.* at 13–14.  The panel noted that the applicants had asserted that Levine "was directed to 'map images,'" *id.* at 13 (quoting A503–04), and concluded that there was no "clear and unambiguous disavowal of spherical or curved images that would support the district court's construction," *id.* at 14 (citing *Invitrogen*, 327 F.3d at 1369).  The panel did not identify a difference between "front and side views" and "non-aerial views" of objects in the patented invention.

## ARGUMENT

### I.    This Court's Treatment Of Amendments Made To Overcome Disallowance Of A Patent Claim Is In Square Conflict With Supreme Court Precedent.

The Supreme Court has long held that when an applicant amends a patent claim to overcome the examiner's disallowance based on the prior art, the new claim language must be strictly construed against the applicant. *Exhibit Supply Co. v. Ace Patents Corp.*, 315 U.S. 126, 136–37 (1942); *Smith v. Magic City Kennel*

*Club, Inc.*, 282 U.S. 784, 789–90 (1931); *see also I.T.S. Rubber Co. v. Essex Rubber Co.*, 272 U.S. 429, 443–44 (1926). By striking a phrase and replacing it with another to overcome the rejection, the applicant "recognize[s] and emphasize[s] the difference between the two phrases and proclaim[s] his abandonment of all that is embraced in that difference." *Exhibit Supply*, 315 U.S. at 136. "The difference which he thus disclaim[s] must be regarded as material, and since the amendment operates as a disclaimer of that difference[,] it must be strictly construed against him." *Id.* at 137.

The Court emphasized that this is a question of claim "construction." *Id.* And "[a]s the question is one of construction of the claim, it is immaterial whether the examiner was right or wrong in rejecting the claim as filed." *Id.* If an applicant believes that a rejected claim is patentable, the applicant is free to appeal the examiner's disallowance. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 734 (2002). But an applicant's "decision to forgo an appeal and submit an amended claim is taken as a concession that the invention as patented does not reach as far as the original claim." *Id.* Having voluntarily chosen to "narrow[] his claim in order to obtain a patent," the applicant "may not by construction, or by resort to the doctrine of equivalents, give to the claim a larger scope which it might have had without the amendments, which amount to a disclaimer." *I.T.S. Rubber*, 272 U.S. at 444 (internal quotation marks omitted).

On the contrary, the amended claim language "must be strictly construed against the inventor and looked upon as disclaimers." *Smith*, 282 U.S. at 790.

In sum, the Supreme Court presumes that amendments made to overcome disallowance are narrowing, and it construes the resulting claim scope narrowly. This Court, in contrast, presumes that an amendment during prosecution does *not* narrow claim scope unless a surrender of claim scope is "clear and unmistakable" or "clear and unambiguous" (the Court has used those formulations interchangeably). *See, e.g.*, *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1325 (Fed. Cir. 2013); *Paragon Solutions, LLC v. Timex Corp.*, 566 F.3d 1075, 1085–86 (Fed. Cir. 2009); *Invitrogen*, 327 F.3d at 1369; *see also Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1275, 1285 (Fed. Cir. 2010) (disclaimer only when amendment "clearly narrows the scope of a claim").

Thus, while this Court has acknowledged that amendments are relevant, *see, e.g.*, *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1327 (Fed. Cir. 2003); *York Prods., Inc. v. Cent. Tractor Farm & Family Ctr.*, 99 F.3d 1568, 1575 (Fed. Cir. 1996), and entitled to "weight," *e.g.*, *Bd. of Regents of the Univ. of Tex. Sys. v. BENQ Am. Corp.*, 533 F.3d 1362, 1369 (Fed. Cir. 2008); *Jansen v. Rexall Sundown, Inc.*, 342 F.3d 1329, 1333 (Fed. Cir. 2003), it has given them much less weight than the Supreme Court. Indeed, under this Court's "clear and unmistakable" standard, a narrowing of the claim scope must be "both so clear as

to show reasonable clarity and deliberateness and so unmistakable as to be unambiguous evidence of disclaimer." *Omega Eng'g, Inc. v. Raytek Corp*., 334 F.3d 1314, 1325 (Fed. Cir. 2003) (citations omitted).  As applied to claim amendments, that standard squarely conflicts with the Supreme Court authority discussed above; indeed, it is the exact opposite of the Supreme Court's presumption.

This Court's "clear and unmistakable" standard is also incompatible with the Supreme Court's holding that an applicant who amended a claim during prosecution to overcome a prior-art reference is presumptively estopped from relying on the doctrine of equivalents.  If an accused product does not literally infringe a patent claim, it may sometimes be held to infringe under the doctrine of equivalents if the differences between the claim language and the accused product are insubstantial.  *See Festo*, 535 U.S. at 731–32, 733.  That doctrine thereby expands the effective claim scope by capturing accused products that do not infringe the claim language, but are only insubstantially different.  *See id.*  When a patentee has chosen to amend a claim to secure allowance, however, the "courts may presume . . . that the territory surrendered is *not* an equivalent of the territory claimed."  *Id.* at 741.

It follows *a fortiori* that the amended claim language must be construed more narrowly than the original language.  The limits on the doctrine of

11

equivalents in this context presuppose that the claim scope has been narrowed and the question is whether to effectively reinstate some of the surrendered claim scope through equivalents. *See, e.g.*, *id.* at 733–41. If an amended claim is construed to have the same scope as the original claim, however, those limits are evaded because the applicants receive through construction what they could not under the doctrine of equivalents—an untenable result, given that the doctrine of equivalents broadens the effective claim scope. Thus, this Court's "clear and unambiguous" standard not only conflicts with the Supreme Court's claim-construction jurisprudence, it is incompatible with the Court's equivalents jurisprudence as well.

## II.    This Court Has Not Squarely Considered This Conflict.

This conflict appears to have arisen without express consideration of the Supreme Court holdings discussed above. This Court first applied its "clear and unambiguous" standard to argument-based disclaimer—*i.e.*, in determining whether an applicant's arguments during prosecution should be treated as disclaiming subject matter even when the applicant did not amend the claim language. *See generally Omega Eng'g*, 334 F.3d at 1323–26 (extensively reviewing this Court's jurisprudence). But in extending that standard to amendments made to overcome disallowance, the Court does not appear to have analyzed the compatibility of that approach with the Supreme Court holdings

discussed above. *See, e.g.*, *Invitrogen*, 327 F.3d at 1367–69.

By contrast, in the related context of prosecution-history estoppel, this Court has distinguished between arguments and amendments. In determining whether the prosecution history estops a patentee from relying on the doctrine of equivalents, this Court requires that estoppels based on argument to the examiner be "clear and unmistakable," but it does not apply that standard to estoppels based on claim amendments. *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1364 (Fed. Cir. 2006). Instead, the Court "presume[s] that the patentee surrendered all subject matter between the broader and the narrower language." *Id.* (quoting *Festo*, 535 U.S. at 740). This Court should draw the same distinction between argument- and amendment-based disclaimers.

## III.    This Case Illustrates The Importance Of The Question Presented.

As explained above, the applicants replaced "non-aerial views" with "substantially elevations" in order to overcome the examiner's disallowance based on the Levine prior-art reference. The panel then held that "substantially elevations" refers to all front or side views. Slip op. 14. That completely undid the amendment because, in the context of this invention, all non-aerial views *are* front or side views. *See* p. 6, *supra.* Indeed, the panel identified no difference in claim scope between "non-aerial views" and its construction of "substantially elevations." Neither has Vederi.

The panel noted that, in addition to amending the claims to add the "substantially elevations" limitation, the applicants also argued that the prior-art reference involved maps. *See* slip op. 13–14. But since maps are by definition aerial views, that argument does not explain the amendment or demonstrate any difference between non-aerial views and front or side views. While the panel may be correct that the applicants' argument about Levine did not surrender claim scope, the amendment did, and that amendment must be given effect. By requiring that any change in claim scope be "clear and unambiguous," however, the panel deprived the amendment of any discernible effect.

This issue is especially important because vague and overbroad claims have become a plague. *See, e.g.*, *Enzo Biochem, Inc. v. Applera Corp.*, 605 F.3d 1347, 1349 (Fed. Cir. 2010) (Plager, J., dissenting from denial of panel reh'g). Construing claim language in context is essential to clarifying otherwise ambiguous claim language. And "the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (*en banc*).

The prosecution history is especially important in cases, like this one, where the applicants added a claim limitation during prosecution. Applicants who make

narrowing amendments during prosecution rarely make corresponding changes to the specification. Thus, reading amended language broadly in light of the specification while discounting the prosecution history poses a high risk of assigning overbroad constructions to amended claims.

That is what happened here. The panel discarded the meaning of "elevation" in order to give meaning to the term "substantially," and then read "substantially elevations" to be broad enough to encompass spherical imagery because fish-eye lenses are briefly mentioned in the specification. *See* slip op. 10–11; pp. 7–8, *supra*. By doing so, the court looked to the wrong context. Instead of relying on the amendment—which confirms at a minimum that "substantially elevations" encompasses something less than all non-aerial views—the panel focused on the specification, which was drafted before the applicant narrowed the claims to replace "non-aerial view" with "substantially elevations" and does not even use the term "substantially elevations." The result was to read "elevations" out of the claims and to restore the original, pre-amendment claim scope. This Court should grant *en banc* review to reconcile its jurisprudence with the Supreme Court's and give proper effect to claim amendments.

## CONCLUSION

This Court should grant the petition for rehearing *en banc*.

15

Respectfully submitted this 28th day of April, 2014.

   /s/ Daryl L. Joseffer

Daryl L. Joseffer
  *Counsel of Record*
Karen Schoen*
KING & SPALDING LLP
1700 Pennsylvania Ave., NW
Washington, DC 20006
(202) 737-0500
djoseffer@kslaw.com
kschoen@kslaw.com

Adam M. Conrad
KING & SPALDING LLP
100 N. Tryon St., Suite 3900
Charlotte, NC 28202
(704) 503-2600
aconrad@kslaw.com

*Counsel for Appellee*

*Admitted only in New York; practice
supervised by principals of the firm.*

# ADDENDUM

# United States Court of Appeals
# Federal Circuit

———————————

**VEDERI, LLC,**
*Plaintiff-Appellant,*

**v.**

**GOOGLE, INC.,**
*Defendant-Appellee.*

———————————

2013-1057, -1296

———————————

Appeals from the United States District Court for the Central District of California in No. 10-CV-7747, Chief Judge Alex Kozinski of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

———————————

Decided: March 14, 2014

———————————

DAVID A. DILLARD, Christie, Parker & Hale, LLP, of Glendale, California, argued for plaintiff-appellant. With him on the brief was STEVEN ERICK LAURIDSEN.

DARYL L. JOSEFFER, King & Spalding, LLP, of Washington, DC, argued for defendant-appellee. With him on the brief was ADAM CONRAD of Charlotte, North Carolina. Of counsel on the brief were SASHA G. RAO and BRANDON H. STROY, Ropes & Gray, LLP, of East Palo Alto, California, and TODD MATTHEW SIMPSON and CHRISTOPHER J. HARNETT, of New York, New York.

—————————————

Before RADER, *Chief Judge*, DYK and TARANTO, *Circuit Judges*.

RADER, *Chief Judge*.

The United States District Court for the Central District of California entered summary judgment of non-infringement in favor of Google, Inc. (Google) and against Vederi, LLC (Vederi) on October 5, 2012.  Because the district court erred in its claim construction, this court vacates the judgment of non-infringement and remands for further proceedings.

## I.

Vederi sued Google for patent infringement on October 15, 2010, alleging that Google's "Street View" infringed various claims of four related patents: U.S. Patent Nos. 7,239,760 ('760 patent); 7,577,316; 7,805,025; and 7,813,596 (collectively the Asserted Patents).  The Asserted Patents share a common specification[1] and claim priority to a common provisional patent application.

Generally speaking, the Asserted Patents relate to methods for creating synthesized images of a geographic area through which a user may then visually navigate via a computer. '760 patent abst.  In acquiring the images, a recording device is mounted on top of a car that is driven throughout the geographic area. *Id.* at col. 4 ll. 52–65.  In one embodiment, a single camera points generally horizontally and perpendicularly to the axis of the street to capture front views of the objects lining the streets (and sometimes side views of buildings, stores, homes, and

—————————————

[1]  As the Asserted Patents share a common specification, all citations to the specification are to the '760 patent.

other objects). *Id.* at col. 5 ll. 55–64. The Asserted Patents disclose that multiple cameras may also be used to capture views in different directions. *Id.* at col. 5 ll. 3–10.

The camera captures and records images as it passes by objects (e.g., stores, buildings, cars). *Id.* at col. 5 ll. 20–21. By combining these images of the geographic area, the Asserted Patents disclose generating a composite image that provides a field of view that is wider than that provided by any single image. *Id.* at col. 5 ll. 55–64. Figure 2 illustrates certain aspects of the invention of the Asserted Patents.



Fig.2

*Id.* at fig. 2. As shown in Figure 2, the camera captures views as the vehicle moves along axis X (58). *Id.* at col. 5 ll. 55–64. Nonetheless a composite image (40) gives a viewer the perspective of viewing the passing objects from the vantage point of a fictitious camera (44). *Id.* Figure 16 depicts an exemplary graphical user interface that also illustrates a composite image as indicated by the box surrounding image area 224. *Id.* at col. 12 ll. 29–41.



*Id.* at fig. 16 (emphasis added). The Asserted Patents note that the cameras may use fish-eye lenses, *id.* at col. 5 ll. 1–3, and provide "fish-eye views of the objects," *id.* at col. 6 ll. 23–24.

The Asserted Patents incorporate by reference, and claim priority to, U.S. Provisional Application No. 60/238,490, which was filed on October 6, 2000. That provisional patent application discloses, in relevant part:

Future embodiments of the invention could present video/image data in different formats. For example, rather than using a camera facing directly to the street side, a slightly forward (or backward)-looking camera could be used to provide a panoramic look up (or down) the street. Also, if sufficient cameras to cover all viewing directions are used (so as to provide 360 degrees of view) images (and synthetic panoramas) where the direction of view is user-controllable can be provided.

J.A. 217.

Claim 1 of the '760 patent is representative of the asserted claims. It recites:

1. In a system including an image source and a user terminal having a screen and an input device, a method for enabling visual navigation of a geographic area from the user terminal, the method comprising:

receiving a first user input specifying a first location in the geographic area;

retrieving from the image source a first image associated with the first location, the image source providing a plurality of *images depicting views of objects in the geographic area, the views being substantially elevations of the objects in the geographic area*, wherein the images are associated with image frames acquired by an image recording device moving along a trajectory;

receiving a second user input specifying a navigation direction relative to the first location in the geographic area;

determining a second location based on the user specified navigation direction; and

retrieving from the image source a second image
associated with the second location.

'760 patent col. 15 l. 57–col. 16 l. 9 (emphasis added). The
dispute on appeal concerns the "substantially elevations"
limitation, which appears in all of the asserted claims.
The district court concluded that Google did not infringe
any asserted claims after construing the term "images
depicting views of objects in a geographic area, the views
being substantially elevations of the objects in the geo-
graphic area" as "vertical flat (as opposed to curved or
spherical) depictions of front or side views." Thus, under
the trial court's reading of the claims, spherical or curved
images fell outside the scope of Vederi's patent claims.

The accused product—Google's Street View—provides
context for the parties' disagreement. According to
Google, Street View combines images of a wide range of
views recorded by multiple cameras having wide-angle
lenses mounted on a moving vehicle. J.A. 2567–68.
Those photographs are overlapping pictures taken from a
single location at approximately the same time. *Id.*



These images are stitched together into a virtual spheri-
cal composite image. *Id.* at 2569. The resulting image is
a two-dimensional representation of a spherical
shape. *Id.*



The spherical projections are then cut into square tiles to reduce bandwidth when a user is viewing only a portion of the spherical image. *Id.* at 2570. As shown in the figure below, the spherical panorama gives the user the option to scroll around and view objects as if the user were standing in the center of the sphere. *Id.* at 2571–73.



*Id.* at 3169. According to Google, it does not infringe the Asserted Patents because its product produces images and views that are curved or spherical, and never flat. *Id.* at 2570–73.

## III.

The district court conducted a *Markman* hearing on November 22, 2011. The parties agreed that the "substantially elevations" limitation referred to front and side views of objects. However, the parties disagreed as to the meaning of the limitation, "depicting views of objects . . . the views being substantially elevations of the objects in the geographic area." Vederi stated that the limitation "depicting views of objects . . . the views being substantially elevations of objects" means "front or side views of objects." Google contended that the limitation means "vertical flat (as opposed to curved or spherical) depictions of front or side views." The district court adopted Google's construction because it concluded that

the Asserted Patents did not "disclose[] anything about spherical views." *Id.* at 193–94.

Google and Vederi filed competing motions for summary judgment on the issue of infringement. In its opinion on summary judgment, the district court stated that it "adopted Google's construction of 'substantially elevations' because Vederi's method of taking, processing, and displaying images creates only vertical flat views, not spherical ones." *Id.* at 4. The district court elaborated by noting that the "photographs are captured by cameras moving along a horizontal plane. . . . The result is one long, flat composite picture of a street . . . . Nothing about that method or result suggests that the patents cover curved or spherical images." *Id.* at 5.

The district court further observed that the reference to 360 degree panning in the provisional patent application refers to the creation of a 360 degree panorama, akin to "panning 360 degrees along a horizontal plane, not within a sphere." *Id.* at 5. The district court noted that it would be similar to taking pictures with a camera "as it spun around on a Lazy Susan." *Id.* According to the district court, it would not be possible to pan up and down as in Street View. *Id.*

Based on its claim construction, the district court entered summary judgment of non-infringement in favor of Google. The district court noted that "[t]he court's construction of the 'substantially elevations' limitation means that if Street View presents only curved/spherical images, it doesn't infringe Vederi's patents because all of Vederi's patents contain the 'substantially elevations' limitations." *Id.* at 6. After considering the parties' competing arguments, the court explained that Street View's images "may appear to be flat to the naked eye, [but] they are actually curved" because of Google's methods for capturing, processing, and displaying them. *Id.* at 9. The district court concluded, "[b]ecause Street View displays only

curved views, it doesn't contain the 'substantially eleva-
tions' limitation, and so doesn't literally infringe Vederi's
patents." *Id.* It also found no infringement under the
doctrine of equivalents. *Id.* at 10.

Vederi appeals. This court has jurisdiction under 28
U.S.C. § 1295(a)(1).

## IV.

Claim construction is an issue of law reviewed de no-
vo. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456
(Fed. Cir. 1998). In construing claims, this court relies
primarily on the claim language, the specification, and
the prosecution history. *Phillips v. AWH Corp.*, 415 F.3d
1303, 1314–17 (Fed. Cir. 2005) (en banc). "Apart from the
claim language itself, the specification is the single best
guide to the meaning of a claim term." *AIA Eng'g Ltd. v.
Magotteaux Int'l S/A*, 657 F.3d 1264, 1272 (Fed. Cir.
2011) (internal quotations and citation omitted). And
while the prosecution history often lacks the clarity of the
specification, it is another established source of intrinsic
evidence. *Id.* After considering these three sources of
intrinsic evidence, a court may also seek guidance from
extrinsic evidence. *Phillips*, 415 F.3d at 1317–18. How-
ever, extrinsic evidence may be less reliable than the
intrinsic evidence. *AIA Eng'g*, 657 F.3d at 1273.

In the present case, the district court construed "im-
ages depicting views of objects in a geographic area, the
views being substantially elevations of the objects in the
geographic area" as "vertical flat (as opposed to curved or
spherical) depictions of front or side views." J.A. 4. A
careful review of the record shows that the district court
erred by excluding all curved or spherical views and
images.

The district court based its construction of "substan-
tially elevations" largely on extrinsic evidence regarding
the technical meaning of "elevation" as an architectural

term of art. *Id.* at 24. Various technical dictionaries define elevation generally as a projection of a building surface onto a vertical plane or on a plane vertical (at a right angle) to the horizon. *See id.* at 1744, 1748. Indeed, according to Google, elevations are "non-perspective, two-dimensional view[s] depicted as if the viewer were simultaneously positioned at 90 degrees (along the horizontal plane) from every point of the object." Appellee's Br. 25. American Architecture: An Illustrated Encyclopedia provides a useful illustration of an elevation, depicted on the plane to the left:



elevation

Cyril Harris, American Architecture: An Illustrated Encyclopedia 114 (1998).

However, the district court erred in construing "substantially elevations" without sufficiently considering the intrinsic evidence in this case. In this case, the claim language is a critical part of the record that shows the error in the trial court's reading of the claims. The operative language in this case is "*substantially* elevations." The district court's construction requiring elevation, and "elevation" alone in the strict sense, gives no effect to the "substantially" modifier contained in the claims. "A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so." *Merck & Co., Inc. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005). By effectively reading "substantially" out the claims, the district court erred. The term "sub-

stantially" takes on important meaning in light of the rest of the intrinsic evidence in this record.

For example, the Asserted Patents relate to taking photographs or videos of objects to create images and depict views of a geographic area, '760 patent col. 3 ll. 44–65, not architectural drawings of buildings. Figure 16 is illustrative, depicting a view of buildings showing depth and perspective, not to mention both the front and side of one of the buildings. '760 patent fig. 16; *cf.* Appellee's Br. 23 ("A frontal view of a building that includes part of its side is not an elevation."). Additionally, the specification of the Asserted Patents discloses the use of a fish-eye lens, '760 patent col. 5 ll. 1–3, and "fish-eye views," *id.* at col. 6 l. 23. A photographic image through a fish-eye lens provides a curved, as opposed to vertical, projection, and almost certainly reflects curvature and perspective. In other words, the photographic image is not flat and not an elevation.

Google argues that the meaning of "substantially" merely reflects the fact that, as a practical matter, photographic images, such as those disclosed in the Asserted Patents, could not depict true elevations as that would require a camera lens as large as the object being photographed (here, buildings, cars, and the like). Indeed, Google concedes that using a camera to record an image of a true elevation is a "physical impossibility absent an absurdly large camera," Appellee's Br. 36. But under this interpretation, "substantially" has no independent operative effect other than to account for the specification's disclosure of cameras as a means for capturing images. This interpretation would not allow the claims to cover the fish-eye lens embodiment. Thus, the district court's confining claim construction does not account for important parts of the intrinsic record.

This court also disagrees with the district court's conclusion that its construction is warranted "because

Vederi's method of taking, processing and displaying images creates only vertical flat views, not spherical ones." J.A. 4. For starters, the provisional application incorporated by reference into the Asserted Patents notes that 360 degree synthetic panoramas may be created if a sufficient number of cameras are used. J.A. 217. And while Google argues that the specification only discloses a method of creating the composite images by combining vertical flat columns that would result in vertical flat images, the specification simply states that "preferably" the composite images are created on a column-by-column basis. '760 patent col. 6 ll. 4–9. Even assuming this method results in vertical flat views, the specification does not state that this is the *only* way to create composite images, and this court perceives no reason to limit the disputed claim language based on that particular embodiment. *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 905–06 (Fed. Cir. 2004).

Nor does the specification demonstrate any disavowal of curved or spherical images supporting the district court's construction. Google places a great deal of weight on the following statement from the Asserted Patents:

> The prior art further teaches the dense sampling of images of an object/scene to provide different views of the object/scene. The sampling is generally done in two dimensions either within a plane, or on the surface of an imaginary sphere surrounding the object/scene. Such a sampling, however, is computationally intensive and hence cumbersome and inefficient in terms of time and cost.

> Accordingly, there is a need for a system and method for creating a visual database of a comprehensive geographic area in a more time and cost efficient manner. Such a system should not require the reconstruction of 3D scene geometry

nor the dense sampling of the locale in multiple
dimensions.

'760 patent col. 1 l. 63–col. 2 l. 7. This statement does not
give rise to a clear and unmistakable disavowal. *See
Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1322 (Fed. Cir.
2013). In context, these statements in the specification
refer to the dense sampling of an object using cameras
placed in a sphere surrounding the object looking in-
wards. Thus, the 3D scene geometry being discussed is
using the photographs surrounding an object to recon-
struct its 3D shape. In other words, this reference is
fundamentally different from using a cluster of cameras
to take images from a particular point looking out in all
directions. Notably, the Asserted Patents actually dis-
close doing just that: "a duodecahedron of cameras may be
used to record the objects from all viewing direc-
tions." '760 patent col. 5 ll. 6–7. Thus, the record, viewed
in its entirety and with reference to the proper context,
does not contain any disclaimer, let alone a clear and
unmistakable disavowal.

Additionally, the prosecution history does not support
the district court's construction. Google contends that the
inventors of the Asserted Patents disclaimed the con-
struction sought by Vederi in responding to a rejection
over a prior art reference. Specifically, the application
leading to the '760 patent initially contained claims
reciting "images providing a non-aerial view of the ob-
jects." J.A. 404. The Patent Office rejected those claims
in view of U.S. Patent No. 6,140,943 (Levine). The appli-
cant responded by amending the claims to remove "non-
aerial view" and add "substantially elevations." *Id.* at
494. The applicant also correctly noted that Levine was
directed to "map images, which may include names of
streets, roads, as well as places of interest" that a traveler
could use to navigate through a geographic area. *Id.* at
503–04. Therefore, Levine did not disclose images "de-
pict[ing] views that are 'substantially elevations of the

objects in a geographic area'" or "acquired by an image recording device moving along a trajectory." *Id.* at 504. Despite Google's protestations to the contrary, this court discerns no clear and unambiguous disavowal of spherical or curved images that would support the district court's construction. *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1369 (Fed. Cir. 2003).

Having analyzed the claims, the specification and the prosecution history, this court concludes that the district court erred in construing "images depicting views of objects in a geographic area, the views being substantially elevations of the objects in the geographic area" as "verti-cal flat (as opposed to curved or spherical) depictions of front or side views." To the contrary, the record shows that "views being substantially elevations of the objects" refers to "front and side views of the objects." Thus, as properly construed, the claims do not exclude curved or spherical images depicting views that are substantially front or side views of the objects in the geographic area.

## VI.

This court has considered Google's remaining argu-ments in favor of the district court's claim construction, but finds them unpersuasive. This court also declines Vederi's request to consider its infringement arguments on appeal without the benefit of the district court's fact-finding under a proper construction of the claims. Accord-ingly, in view of the foregoing, this court reverses the district court's claim construction, vacates its judgment of non-infringement and remands for further proceedings consistent with this opinion.

## VACATED AND REMANDED

# CERTIFICATE OF SERVICE

This is to certify that I have this day served the foregoing Petition for Rehearing *En Banc* via the Court's ECF system to each party's counsel of record.

This 28th day of April, 2014.          /s/ Daryl L. Joseffer
                                        Daryl L. Joseffer